**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
TOPEKA DIVISION**

| | |
|---|---|
| THE STATE OF KANSAS, EX REL., DEREK SCHMIDT, ATTORNEY GENERAL<br><br>*Plaintiff,*<br><br>v.<br><br>ELI LILLY AND COMPANY, *et al.*,<br><br>*Defendants.* | Civil Action No. 5:23-cv-4002-EFM-RES<br><br><br>**ORAL ARGUMENT REQUESTED** |

**PBM DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM AND SUGGESTIONS IN SUPPORT THEREOF**

# TABLE OF CONTENTS

NATURE OF THE MATTER BEFORE THE COURT ................................................................ 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT .................................................................................................................... 3

I.     THE STATE FAILS TO PLEAD A CLAIM UNDER THE KCPA. ................................. 4

    A.     The State fails to allege that the PBM Defendants are "suppliers" engaged in any "consumer transaction." ................................................................................. 4

    B.     Allegations lumping all defendants together do not satisfy Rule 9(b). ................ 7

    C.     The State fails to state a claim for deception under the KCPA. ........................... 8

        1.     The Complaint fails to identify material misrepresentations or omissions. 9

            a.     Statements that PBMs' interests "are aligned with diabetics and payors" ......................................................................................... 9

            b.     Statements that PBMs work to lower the price of the at-issue drugs ............................................................................................... 10

            c.     Statements that "PBMs construct formularies designed to improve the health of diabetics" ................................................. 11

            d.     Annual Reports ..................................................................... 12

            e.     Congressional Testimony ...................................................... 13

            f.     "List Prices" ......................................................................... 14

        2.     The State fails to allege any duty to disclose. ................................... 14

    D.     The State fails to plead KCPA unconscionability claims. ................................. 15

II.     THE STATE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT. ................ 18

    A.     The State's unjust enrichment allegations fail Rule 9(b)'s particularity requirement. ........................................................................................................ 18

    B.     The State's allegations of express contracts foreclose any claim for unjust enrichment. ....................................................................................................... 18

    C.     A claim for unjust enrichment is inconsistent with the State's *parens patriae* capacity. ............................................................................................................. 20

III.     THE STATE HAS NOT PLAUSIBLY ALLEGED A CIVIL CONSPIRACY .............. 21

IV.     ANY CLAIMS BY THE STATE IN ITS CAPACITY AS A HEALTH PLAN OPERATOR OR PAYOR ARE TIME-BARRED. ......................................................... 22

V.     THE COURT SHOULD DISMISS THE PBMS' CORPORATE PARENTS AND AFFILIATE ENTITIES. ............................................................................................... 24

CONCLUSION ............................................................................................................... 26

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592 (1982) ........................20

*All Brands Distrib., LLC v. Vital Pharms., Inc.*, 2022 WL 3646274 (D. Kan. Aug. 24, 2022) ........................................................................................................................20

*Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009) ............................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................3, 19

*Banks v. Opat*, 814 F. App'x 325 (10th Cir. 2020)........................................................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................3

*Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630 (10th Cir. 2022) .......................................10

*Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310 (E.D.N.Y. 2001) ............................................10

*Bonilla v. Volvo Car Corp.*, 150 F.3d 62 (1st Cir. 1998)................................................................15

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272 (10th Cir. 2021) ...............................................4

*Buridi v. Idbeis*, 2016 WL 6905899 (D. Kan. Nov. 22, 2016) .....................................................22

*City of Wichita, Kan. v. U.S. Gypsum Co.*, 72 F.3d 1491 (10th Cir. 1996) ............................22, 23

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990)........11

*CSMN Inv., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276 (10th Cir. 2020) .............................13

*Cyprus Amax Mins. Co. v. TCI Pac. Commc'ns, LLC*, 28 F.4th 996 (10th Cir. 2022)............24, 25

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997) ..............................................................11

*Freedom Transp., Inc. v. Navistar Int'l Corp.*, 2020 WL 430213 (D. Kan. Jan. 28, 2020) ...........9

*Friedman v. Nationwide Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 236227 (C.D. Cal. Feb. 9, 2017) ........................................................................................................................10

*GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 808 F. App'x 655 (10th Cir. 2020) ....................25

*Geico Indem. Ins. Co. v. Kannaday*, 2007 WL 2990552 (D. Kan. Oct. 11, 2007) .......................18

*Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007) ..................................................7

*Gov't of Puerto Rico v. Carpenter Co.*, 442 F. Supp. 3d 464 (D.P.R. 2020) ...............................21

*Griffitts & Coder Custom Chopping, LLC v. CNH Indus. Am. LLC*, 438 F. Supp. 3d 1206 (D. Kan. 2020) ........................................................................................................5

*Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997) ..............................................11

*Harris Cnty. v. Eli Lilly & Co.*, 2022 WL 479943 (S.D. Tex. Feb. 16, 2022) ...............19

*In re Auto. Parts Antitrust Litig.*, 2021 U.S. Dist. LEXIS 8201 (E.D. Mich. Jan. 15, 2021) ........21

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009) ...............16

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, 44 F.4th 959 (10th Cir. 2022) ........................................................................................1

*In re Graphic Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) ......16, 17

*In re Motor Fuel Temperature Sales Pracs. Litig.*, 2012 WL 4794355 (D. Kan. Oct. 3, 2012) ........................................................................................................16

*In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1079 (S.D. Cal. 2018) ............21

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236 (10th Cir. 2022) ........................12

*Kastner v. Intrust Bank*, 2011 WL 2149432 (D. Kan. June 1, 2011) .............................5

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (S.D.N.Y. 1996) ..................15

*Kiger ex rel. Qualcomm Inc. v. Mollenkopf*, 2021 U.S. Dist. LEXIS 220509 (D. Del. Nov. 15, 2021) ........................................................................................................12

*Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308 (11th Cir. 2000) ...............................15

*Marksberry v. FCA US LLC*, 606 F. Supp. 3d 1075 (D. Kan. June 9, 2022) ................15

*Masters v. Daniel Int'l Corp.*, 1992 WL 405307 (D. Kan. Dec. 3, 1992) ......................24

*McLoughlin v. Golf Course Superintendents Ass'n of Am.*, 1990 WL 129204 (D. Kan. Aug. 16, 1990) ........................................................................................................24

*Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co.*, 130 F.3d 950 (10th Cir.1997) ........19

*Meyer v. Christie*, 634 F.3d 1152 (10th Cir. 2011) ..............................................19, 24

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603 (S.D. Miss. Aug. 29, 2022) ........................................................................................................25, 26

*Moeckel v. Caremark Rx Inc.*, 385 F. Supp. 2d 668 (M.D. Tenn. 2005) ......................25

*Moody v. Ocwen Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 190592 (C.D. Cal. Feb. 22, 2016) ........................................................................................................................10

*Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17 (1st Cir. 2017) ..................................11

*N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626 (10th Cir. 2008) ......................23

*Orchestrate HR, Inc. v. Blue Cross Blue Shield Kansas*, 2021 WL 1238254 (D. Kan. Apr. 2, 2021) ..........................................................................................................................7

*Ormsby v. Imhoff & Assocs., P.C.*, 2014 WL 4248264 (D. Kan. Aug. 27, 2014) ...........9

*Ret. Sys. Of Haw. v. Whole Foods Mkt., Inc.*, 905 F.3d 892 (5th Cir. 2018) ................12

*Roberts v. Shawnee Mission Ford*, 2003 WL 22143727 (D. Kan. Aug. 20, 2003) .........5

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ..........................................11

*Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464 (10th Cir. 1993) ............................20

*Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019).......................12

*Schmid v. Roehm GmbH*, 544 F. Supp. 272 (D. Kan. 1982).........................................25

*Schneider v. U.S. Bank, N.A.*, 2020 WL 4673159 (D. Kan. Aug. 12, 2020) .................16

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125 (E.D. Mo. 2007)............17

*Shigo v. Clark*, 2022 WL 2966320 (D. Kan. July 27, 2022) .........................................18

*Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258 (10th Cir. 2011).........20

*SMD Invs. Ltd. v. Raytheon Aircraft Co.*, 2006 WL 580968 (D. Kan. Mar. 8, 2006) ..................16

*Socophi S.P.R.L. v. Airport Sys. Int'l, Inc.*, 30 F. App'x 862 (10th Cir. 2002) ............23

*State ex rel. Sullivan v. Lujan*, 969 F.2d 877 (10th Cir. 1992) .....................................20

*Sullivan v. Lab. Corp. of Am. Holdings*, 2018 WL 1586471 (M.D.N.C. Mar. 28, 2018)..............15

*Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022 (D. Kan. 2018)..........17

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ..............................................................4

*Thompson v. Jiffy Lube Int'l, Inc.*, 2006 WL 8406742 (D. Kan. June 13, 2006) .........18

*Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907 (D. Kan. 2007)..............4, 7, 18

*Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007).......13

*United States v. Bestfoods*, 524 U.S. 51 (1998) ...........................................................................24

*Vreeland v. Fisher*, 682 F. App'x 642 (10th Cir. 2017) ..............................................................23

*Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322 (D. Kan. 1996) ....................................................5

*Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154 (D. Kan. 2017).........................................8

*Wichita Fed. Sav. & Loan Ass'n v. Landmark Grp.*, 657 F. Supp. 1182 (D. Kan. 1987)...............7

*Wright v. Enhanced Recovery Co. LLC*, 227 F. Supp. 3d 1207 (D. Kan. 2016) ............................4

### STATE CASES

*Aeroflex Wichita, Inc. v. Filardo*, 275 P.3d 869 (Kan. 2012) .......................................................21

*Baldwin v. Priem's Pride Motel, Inc.*, 580 P.2d 1326 (Kan. 1978)...............................................9

*CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 32 P.3d 1197 (Kan. Ct. App. 2001) ..........5

*Corvias Mil. Living, LLC v. Ventamatic, Ltd.*, 450 P.3d 797 (Kan. 2019) ...................................18

*Dana v. Heartland Mgmt. Co., Inc.*, 301 P.3d 772 (Kan. Ct. App. 2013) ....................................16

*Doughty v. CSX Transp., Inc.*, 905 P.2d 106 (Kan. 1995)......................................................24, 25

*Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304 (Kan. 1988) ............................................16

*Farrell v. Gen. Motors Corp.*, 815 P.2d 538 (Kan. 1991) .............................................................6

*Gonzales v. Assocs. Fin. Serv. Co.*, 967 P.2d 312 (Kan. 1998) ...................................................16

*Jarvis v. Nationwide Ins. Co. of Am.*, 449 P.3d 454 (Kan. Ct. App. 2019) ..................................24

*Meyer Land & Cattle Co. v. Lincoln Cnty. Conservation Dist.*, 31 P.3d 970 (Kan. Ct. App. 2001) ......................................................................................................................24

*Newman Mem. Hosp. v. Walton Constr. Co.*, 149 P.3d 525 (Kan Ct. App. 2007) ................22, 23

*OMI Holdings, Inc. v. Howell*, 918 P.2d 1274 (Kan. 1996) ...................................................14, 15

*Pancake House, Inc. v. Redmond ex rel. Redmond*, 716 P.2d 575 (Kan. 1986)...........................23

*Remco Enters., Inc. v. Houston*, 677 P.2d 567 (Kan. Ct. App. 1984)...........................................17

*State ex rel. Stovall v. ConfiMed.com, L.L.C.*, 38 P.3d 707 (Kan. 2002) ....................................16

*State ex rel. Stovall v. DVM Enters., Inc.*, 62 P.3d 653 (Kan. 2003).....................................15, 16

*Stoldt v. City of Toronto*, 678 P.2d 153 (Kan. 1984) ..................................................................21

*Univ. of Kan. Hosp. Auth. v. Bd. of Comm'rs*, 327 P.3d 430 (Kan. 2014) .....................................19

*Williamson v. Amrani*, 152 P.3d 60 (Kan. 2007) ...........................................................14

*York v. InTrust Bank, N.A.*, 962 P.2d 405 (Kan. 1998)...........................................................9, 13

## OTHER AUTHORITIES

*In re. Int'l Harvester Co.*, 104 F.T.C. 949 (1984) .........................................13

*Medicare & State Health Care Programs: Fraud & Abuse*, 64 Fed. Reg. 63518 (Nov. 19, 1999) .........................................................3

*OIG Compliance Program Guidance for Pharmaceutical Manufacturers*, 68 Fed. Reg. 23731 (May 5, 2003).........................................................3

42 U.S.C. § 1395w-3a(c)(6)(B) ...........................................................14

42 U.S.C. § 1396r-8 .........................................................3

Kan. Stat. Ann. § 50-624 .........................................................5, 6

Kan. Stat. Ann. § 50-626 .........................................................4, 9, 14

Kan. Stat. Ann. § 627 .........................................................4

Kan. Stat. Ann. § 50-627(a) .........................................................15

Kan. Stat. Ann. § 50-627(b).........................................................15, 17

Kan. Stat. Ann. § 60-512 .........................................................23

Fed. R. Civ. P. 8 .........................................................3, 22

Fed. R. Civ. P. 8(a)(2) .........................................................3

Fed R. Civ. P. 9(b) .......................................................... passim

Fed. R. Civ. P. 8 .........................................................14

Fed. R. Civ. P. 12(b)(2).........................................................1

## NATURE OF THE MATTER BEFORE THE COURT

The State of Kansas seeks to recast rebate negotiations between pharmacy benefit managers (PBMs)[1] and insulin manufacturers as an unlawful "scheme" to inflate the price of certain insulin drugs. But pharmaceutical rebates have been standard business practice for decades. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, 44 F.4th 959, 964-68 (10th Cir. 2022). They reflect hard-fought, competitive negotiations. And they benefit the PBMs' health-plan clients, including clients in the State of Kansas, by lowering the net cost of prescription drugs.

The State nevertheless tries to frame the negotiations between PBMs and manufacturers as a conspiracy resulting in consumer-protection violations that unjustly enrich both sets of defendants. The State's claims fail at the pleading stage for many reasons.

*First*, the State cannot maintain a cause of action under the Kansas Consumer Protection Act (KCPA) because the PBM Defendants are not "suppliers" engaged in "consumer transactions." *Second*, the State has not alleged a KCPA violation with sufficient particularity because it relies on improper group pleading in violation of Rule 9(b). *Third*, the State's KCPA claims fail because the Complaint does not allege deceptive or unconscionable conduct related to any consumer transaction. *Fourth*, the State's unjust-enrichment claims should be dismissed because the State's claims do not satisfy Rule 9(b), the existence of an express contract bars the claim, and the State lacks standing to pursue monetary recovery in a *parens patriae* capacity. *Fifth*, the State's claim

---

[1] The moving Defendants are Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, L.L.C., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions, Inc. (together, "Express Scripts"); CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark PCS Health, L.L.C., and Caremark, L.L.C. (together, "CVS Caremark"); and OptumRx Inc. ("OptumRx"). Collectively, we refer to those entities as the "PBM Defendants," even though certain of those entities are not PBMs. Certain Defendants also have filed motions seeking dismissal under Rule 12(b)(2) for lack of personal jurisdiction; they join this brief subject to and without waiving those personal jurisdiction defenses.

for civil conspiracy fails because the Complaint alleges neither an underlying violation nor any agreement to violate the law. *Sixth*, inasmuch as the State brings any claims in its capacity as a health-plan sponsor or payor, its claims are time-barred. *Seventh*, and at the very least, the Court should dismiss the PBM Defendants' parent entities that are holding companies performing no functions related to the claims alleged.

## STATEMENT OF FACTS

Eli Lilly, Novo Nordisk, and Sanofi are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin and other diabetes medications. Compl. ¶ 5. They also set the list prices for their products. *Id.* ¶¶ 20, 50, 63, 76.

CVS Caremark, Express Scripts, and OptumRx are PBMs that contract with health plan sponsors to administer prescription drug benefits. *Id.* ¶¶ 6, 356-57, 409. Among other things, PBMs develop lists of drugs called "formularies" that their health-plan clients can adopt to determine whether and to what extent those clients cover the cost of certain medications for their members. *Id.* ¶¶ 7-10. Although PBMs develop formulary products that they offer to clients (*id.* ¶ 7), their clients decide whether to accept, reject, or customize an offered formulary and set the coverage that applies to their members.

PBMs play an important role in managing the out-of-pocket cost of pharmaceutical drugs for their health-plan clients. PBMs negotiate with pharmaceutical manufacturers to obtain lower prices on prescription drugs that they can then offer their clients. *E.g.*, *id.* ¶ 276. Through those negotiations, PBMs obtain rebates from manufacturers that can offset the cost of pharmaceutical drugs. Those rebates flow back to the PBMs' clients in accordance with the terms of their client contracts, lowering the clients' net drug costs. *Id.* ¶¶ 356-57. PBMs do not transact business directly with their clients' beneficiaries and do not have business relationships with individual end consumers.

PBMs long have negotiated rebates and discounts, and federal law recognizes PBM-negotiated rebates and other discounts from manufacturers as standard industry practice. *See* 42 U.S.C. § 1396r-8. PBMs' rebates, for example, are protected under a specific "safe harbor" to the Anti-Kickback Statute. *See Medicare & State Health Care Programs: Fraud & Abuse*, 64 Fed. Reg. 63518, 63518 (Nov. 19, 1999); *OIG Compliance Program Guidance for Pharmaceutical Manufacturers*, 68 Fed. Reg. 23731, 23734, 23736 (May 5, 2003).

In this action, the State asserts that the PBMs' negotiations with manufacturers are not hard-fought, arm's length negotiations but a conspiracy to raise the price of insulin. Based on that allegation, the State asserts three causes of action: (1) violation of the KCPA, (2) unjust enrichment, and (3) civil conspiracy. The State purports to bring each claim in a *parens patriae* capacity on behalf of Kansas residents with diabetes. Compl. ¶¶ 34, 39, 194.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In a case alleging conspiracy, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft 'to sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8).

In this case, the State must meet an even higher standard. Because the State alleges deceptive statements and omissions, Rule 9(b)'s heightened pleading requirements apply. Rule 9(b) "enable[s] defendants to prepare meaningful responses, to preclude the use of groundless fraud claims as a pretext to discover a wrong, and to safeguard defendants from lightly made

charges which might damage their reputations." *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 932 (D. Kan. 2007). To that end, a plaintiff making a claim covered by Rule 9(b) must allege with particularity the "time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citations omitted). Plaintiffs cannot carry their pleading burden by using "[l]abels, conclusions, formulaic recitations of elements, and naked assertions" or resorting to conclusory allegations "devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

## I.     THE STATE FAILS TO PLEAD A CLAIM UNDER THE KCPA.

The Complaint does not state a claim under the KCPA (Kan. Stat. Ann. §§ 50-626, 627) for three independent reasons. First, the Act is inapplicable to the PBM Defendants because they are not "suppliers" engaged in "consumer transactions." Instead, they contract with sophisticated counterparties such as pharmaceutical drug manufacturers, health-plan payors, and pharmacies. Second, the State has not alleged any KCPA violation with Rule 9(b) particularity because it relies on improper group pleading. Third, the Complaint does not allege any deceptive or unconscionable conduct.

### A.     The State fails to allege that the PBM Defendants are "suppliers" engaged in any "consumer transaction."

The KCPA prohibits "suppliers" from engaging in deceptive or unconscionable acts "in connection with a consumer transaction." Kan. Stat. Ann. §§ 50-626, 627. It applies only to transactions "between a supplier and a consumer" and its scope is "limited to parties who actually contract with suppliers for goods and services." *Wright v. Enhanced Recovery Co. LLC*, 227 F. Supp. 3d 1207, 1211 (D. Kan. 2016) (Melgren, J.). The State's allegations do not satisfy either of those two statutory prerequisites.

*First*, the Complaint fails to allege that the PBM Defendants' conduct was in connection with a "consumer transaction." A "consumer transaction" is a sale or solicitation within the state "to a consumer." Kan. Stat. Ann. § 50-624. And a "consumer" is an "individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes." *Id.* Transactions with businesses and legal entities such as limited liability companies are excluded because those entities are not "individuals," "family partnerships," or the like.[2] *See Griffitts & Coder Custom Chopping, LLC v. CNH Indus. Am. LLC*, 438 F. Supp. 3d 1206, 1231-37 (D. Kan. 2020); *CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 32 P.3d 1197, 1204 (Kan. Ct. App. 2001). Likewise, the KCPA categorically does not extend to the sale of goods for resale. *Roberts v. Shawnee Mission Ford*, 2003 WL 22143727, at *2 (D. Kan. Aug. 20, 2003); *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1364-65 (D. Kan. 1996).

There are no allegations in the Complaint that PBMs contract with any party or entity that would qualify as a "consumer" under the KCPA. Instead, the State alleges that PBMs contract with pharmaceutical manufacturers, health-plan payors, and retail pharmacies. *E.g.*, Compl. ¶¶ 268-78. None of those entities is an "individual," a "family partnership," or any other qualifying person or entity that "seeks or acquires property or services for personal, family, household, business or agricultural purposes." Kan. Stat. Ann. § 50-624. While a health plan might, in turn, provide services to individual members, the State does not allege that any PBMs engaged those downstream individuals. The KCPA therefore does not apply. *See Griffitts & Coder Custom Chopping, LLC*, 438 F. Supp. 3d at 1237; *Kastner v. Intrust Bank*, 2011 WL 2149432, at *3-4 (D.

---

[2] Insofar as the State seeks to pursue a KCPA claim on its own behalf as a payor or purchaser of insulin, the State is not a "consumer" either. *See* Kan. Stat. Ann. § 50-624.

Kan. June 1, 2011) (Melgren, J.) (dismissing complaint because there were "no allegations that Plaintiff exchanged anything of value in exchange for Defendants' services"), *aff'd*, 569 F. App'x 593 (10th Cir. 2014).

The State's sparse allegations that the PBM Defendants are affiliated with retail and mail-order pharmacies do not change the analysis. The Complaint does not tie any of those entities to the alleged consumer-protection violation: a claimed "Insulin Pricing Scheme" centered on the "PBM Defendants' formularies." *See* Compl. ¶¶ 307-29. Indeed, the Complaint does not allege that any retail pharmacy had any interaction with any PBM or manufacturer related to the price of insulin—much less does it say, with particularity, what role any particular retail pharmacy played. At the very most, retail pharmacies are "accommodating part[ies]," which simply act as intermediaries and do not independently participate in the challenged conduct. *Farrell v. Gen. Motors Corp.*, 815 P.2d 538, 547 (Kan. 1991) (explaining that a car dealership that passed along a settlement offer from GM was an "accommodating party" exempt from KCPA). Such parties are not subject to liability under the KCPA. *Id.*

*Second*, the State fails to plausibly allege that the PBM Defendants are "suppliers" within the meaning of the KCPA. A "supplier" is one who, "in the ordinary course of business, solicits, engages in or enforces consumer transactions." Kan. Stat. Ann. § 50-624. The State has not alleged that the PBM Defendants solicit or engage in consumer transactions. Again, the State alleges that the PBMs contract with health plans—not the individual plan members. And on the other end, the State alleges that the PBMs contract with manufacturers and retail pharmacies. There are no allegations that the PBMs would qualify as "suppliers" that regularly solicit or enforce consumer transactions.

**B. Allegations lumping all defendants together do not satisfy Rule 9(b).**

Because the State has made "[a]llegations of unfair trade practices under the KCPA," the Complaint "must be pleaded with particularity in accordance with Rule 9(b)." *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007). But instead of alleging particularized facts about each Defendant's supposed fraud, the Complaint refers to "Defendants," "PBMs," or "PBM Defendants" collectively hundreds of times. *E.g.*, Compl. ¶¶ 6, 26, 191, 375, 377, 407. Those undifferentiated allegations do not satisfy Rule 9(b).

"When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant." *Thompson*, 505 F. Supp. 2d at 933. The Complaint fails on that score. The State defines "PBM Defendants" to include at least *twelve* separate entities, in addition to "all predecessor and successor entities" for each of those twelve. Compl. ¶¶ 6, 108, 157, 178. Some of those entities offer PBM services. *See, e.g.*, *id.* ¶¶ 80-192. But some do not. Others are mail-order pharmacies, others are retail pharmacies, and still others are parent companies. The entities offering PBM services are direct competitors that contract with different manufacturers to service different clients who, in turn, provide benefits to different beneficiaries. The Complaint nowhere alleges what particular formulary decisions were improperly influenced, which drug costs rose as a result of these formulary decisions, or which drugs were favored (or disfavored) because of the challenged rebates.

Those all-for-one allegations fail under Rule 9(b) because they do not "inform each defendant of the specific fraudulent acts justifying his inclusion in the count." *Wichita Fed. Sav. & Loan Ass'n v. Landmark Grp.*, 657 F. Supp. 1182, 1191 (D. Kan. 1987); *see also Orchestrate HR, Inc. v. Blue Cross Blue Shield Kan.*, 2021 WL 1238254, at *3 (D. Kan. Apr. 2, 2021). Even when the State purports to identify specific PBMs, it improperly lumps together allegations against

"Express Scripts" (six entities, plus predecessors and successors), "CVS Caremark" (five entities, plus predecessors and successors), and "Optum Rx." Compl. ¶¶ 80-119, 120-71, 172-78. Nowhere does the State allege which entity said what, when or to whom those statements were made, or why the unidentified statements were false. *Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154, 1176 (D. Kan. 2017) (failure to identify "who, within . . . broad classes of employees, made misrepresentations" warranted dismissal of claim), *aff'd sub nom. Farmer v. Kan. State Univ.*, 918 F.3d 1094 (10th Cir. 2019).

The State's allegations about statements from the Pharmaceutical Care Management Association (PCMA)—a trade association whose membership is not limited to the PBMs named as Defendants in this lawsuit—are flawed for the same reason. *See* Compl. ¶¶ 294-95, 409(f), (i), 410(f). The State cites alleged statements on the PCMA's website and by its president as "examples" of misrepresentations by the PBMs. *E.g.*, Compl. ¶¶ 409(f), (i), 410(f). But the PCMA is a distinct entity that is not a defendant in this case. And bare allegations that the PBM Defendants generally "control" the PCMA—even were they true—do not identify which specific Defendant is accountable for which alleged PCMA statements under which circumstances. Compl. ¶¶ 294, 306; *Weckhorst*, 241 F. Supp. 3d at 1176.

## C. The State fails to state a claim for deception under the KCPA.

The Complaint also fails to allege that the PBM Defendants engaged in any deceptive acts or practices. The State alleges that Defendants "[k]nowingly ma[de] false representations" about the price of the at-issue drugs and "intentionally misrepresented" the benefits of their formularies and rebate negotiations. *See* Compl. ¶¶ 411, 461. Those claims fail because the Complaint does not allege with 9(b) particularity any misrepresentation or omission.

### 1. The Complaint fails to identify material misrepresentations or omissions.

To be actionable under the KCPA, the alleged "deceptive acts or practices in connection with a consumer transaction" must be "as to a material fact." *York v. InTrust Bank, N.A.*, 962 P.2d 405, 420 (Kan. 1998) (citing Kan. Stat. Ann. § 50-626(a), (b)(2)). The KCPA is only "intended to cover those cases where the supplier goes beyond innocent 'puffing' expected by the consumer." *Ormsby v. Imhoff & Assocs., P.C.*, 2014 WL 4248264, at *10 (D. Kan. Aug. 27, 2014) (quoting 1975 Kansas Comment to Kan. Stat. Ann. § 50-626). Thus, to be actionable, a false representation must "relate to a past or present fact" as distinguished from "an expression of opinion," or "subjective claims about products, which cannot be proven either true or false." *Freedom Transp., Inc. v. Navistar Int'l Corp.*, 2020 WL 430213, at *9 (D. Kan. Jan. 28, 2020); *see Baldwin v. Priem's Pride Motel, Inc.*, 580 P.2d 1326, 1329 (Kan. 1978).

The State's allegations flunk the materiality standard. The State identifies three categories of alleged misrepresentations: that "(a) [the PBM Defendants'] interests are aligned with diabetics and payors; (b) they work to lower the price of the at-issue drugs and, in doing so, they achieve substantial savings for diabetics and payors; and (c) that the PBMs' [sic] construct formularies designed to improve the health of diabetics." Compl. ¶ 406. None of those categories is actionable because all constitute vague, nonspecific statements that courts routinely cast aside. And statements from Congressional hearings are categorically nonactionable, as are the State's allegations that the list prices themselves are false.

#### a. Statements that PBMs' interests "are aligned with diabetics and payors"

The State alleges that on occasion each PBM has represented that it serves the interests of its clients and payors. *E.g.*, Compl. ¶¶ 409(e)(i), 410(a) (Express Scripts allegedly stated that "[a]t Express Scripts we're dedicated to keeping our promises to patients and clients" and "[Express

Scripts] stand[s] up for payors and patients"), ¶ 409(h) (OptumRx allegedly represented that it "negotiate[s] with brand manufacturers . . . on behalf of our customers"), ¶¶ 409(g), 410(e) (CVS Caremark allegedly stated "[w]e negotiate . . . on behalf of employers, unions, government programs, and beneficiaries that we serve" and "that the goal of its pharmacy benefit plans is to ensure 'that the cost of a drug is aligned with the value it delivers'" to patients). The State claims that, "[c]ontrary to their representations that they lower the price of the at-issue drugs," the PBM Defendants "have caused the price paid by diabetics and payors to significantly increase." *Id.* ¶ 418. But alleged statements that an entity will "be on [a client's] side" or advocate for them are "so vague as to be puffery" and are not actionable. *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106-08 (10th Cir. 2009) (bank's slogan that "You take care of your dream. We'll take care of everything else." was puffery); *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 645 (10th Cir. 2022) (bakery's slogan that it is "local" to the consumer's area is "indeterminate and unverifiable" was puffery); *Friedman v. Nationwide Ins. Co. of Am.*, 2017 U.S. Dist. LEXIS 236227, at *6 (C.D. Cal. Feb. 9, 2017) (advertisements that insurer "will act as the insured's advocate" were non-actionable puffery); *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 323 (E.D.N.Y. 2001) ("'You're in good hands with Allstate,' is general, subjective, and cannot be proven true or false."); *Moody v. Ocwen Loan Servicing, LLC*, 2016 U.S. Dist. LEXIS 190592, at *10-12 (C.D. Cal. Feb. 22, 2016) ("Helping Homeowners Is What We Do!" was "a quintessential example of non-actionable puffery").

### b. Statements that PBMs work to lower the price of the at-issue drugs

PBMs are the only entities in the pharmaceutical supply chain whose business models focus on reducing the costs of prescription drugs. The State, however, insists that PBM Defendants' alleged statements that they negotiate to reduce costs for their clients are "misrepresentations."

*E.g.*, Compl. ¶¶ 409(d), (e)(i) ("Express Scripts 'helps our clients and diabetes prevail over cost and care challenges created by this terrible disease'" and Express Scripts "is dedicated to controlling insulin prices because 'we stand up for payors and patients'"), ¶¶ 409(b), (g) ("CVS 'negotiate[s] the best possible discounts off the manufacturers' price on behalf of employers, unions, government programs, and beneficiaries that we serve'" and "is working to develop programs to hold down diabetes costs"), ¶¶ 409(h), 410(d) (OptumRx "negotiate[s] with brand manufacturers to obtain significant discounts off list prices on behalf of our customers" and "mak[es] prescription drugs more affordable for plan sponsors and individuals").

The State claims that those alleged representations are false because "PBM Defendants' formulary construction and the [payments] they receive [from manufacturers] in exchange for formulary placement have caused the price paid by diabetics and payors to significantly increase." *Id.* ¶ 418. But even if the State's allegations were true (and they are not), statements that an entity strives to lower costs are textbook puffery and not actionable. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997); *see also Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 n.5 (1st Cir. 2017) ("[A]dvertising of 'amazing prices' in most circumstances is non-actionable puffery because, standing alone, such advertisements do not make an explicit promise or guarantee."); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (per curiam).

### c. Statements that "PBMs construct formularies designed to improve the health of diabetics"

The State attributes to the twelve named PBM Defendants the supposedly false statement that "PBMs construct formularies designed to improve the health of diabetics." Compl. ¶ 406(c).

Insofar as the State takes issue with alleged representations that formulary construction and rebate negotiations are designed to improve the health of diabetics, that allegation repeats the assertion that PBMs have represented that their interests are "aligned" with the payor clients. *Id.* ¶ 406(a). Those alleged statements are non-actionable puffery for the same reasons discussed above. *See supra* at I.C.1.a. And insofar as the State asserts that PBMs represented that formulary construction and rebate negotiations help lower the cost of products for health plan members, those statements are similarly nonactionable for the reasons discussed above. *See supra* at I.C.1.b. The State never alleges facts (much less with 9(b)-level specificity) explaining how those statements are false.

Any alleged statements by the PBMs that they strive to improve the health of their clients' beneficiaries are not actionable. *E.g.*, Compl. ¶ 410(d) ("OptumRx's website has stated '[t]he services we provide help improve health outcomes for patients . . .'" (emphasis omitted)), ¶ 409(a) ("CVS Caremark represented that it was focused on . . . improv[ing] the health of plan members."). Again, such "general, forward-looking expressions of confidence" are "mere puffery" rather than "material misstatements." *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1249 (10th Cir. 2022); *Emps.' Ret. Sys. Of Haw. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 901 (5th Cir. 2018); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 298 (S.D.N.Y. 2019); *Kiger ex rel. Qualcomm Inc. v. Mollenkopf*, 2021 U.S. Dist. LEXIS 220509, at *5-6 (D. Del. Nov. 15, 2021).

### d.    Annual Reports

The State alleges that certain of the PBM Defendants made false representations in various annual reports. *See* Compl. ¶¶ 83, 129. For example, the State alleges that CVS has "repeatedly, continuously and explicitly stated" in annual reports that it "design[s] pharmacy benefit plans that minimize the costs to the client while prioritizing the welfare and safety of the clients' members and helping improve health outcomes." *Id.* ¶ 83(a). Similarly, the State alleges that Evernorth

stated that it "works with clients, manufacturers, pharmacists, and physicians to increase efficiency in the drug distribution chain, to manage costs in the pharmacy benefit chain and to improve members' health outcomes." *Id.* ¶ 129(c). Those alleged statements, which are not about insulin or diabetes, simply relay corporate goals and areas of focus. They do not satisfy Rule 9(b). The State does not explain how the quoted statements are false or misleading, and it has not alleged facts suggesting that the State or any Kansas citizen even saw the purported statements. Further, there is no allegation how such statements could be "likely to affect consumers' conduct or decision with regard to a product" and therefore material. *In re. Int'l Harvester Co.*, 104 F.T.C. 949, 1056 (1984); *see York*, 962 P.2d 405 at 420.

### e. Congressional Testimony

The State also alleges that the PBM Defendants made false representations in congressional testimony. *See* Compl. ¶¶ 146-47, 342-43, 409-11. But statements made during congressional testimony are protected by the First Amendment under "Petition Clause immunity." *See CSMN Inv., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1283 (10th Cir. 2020) (holding *Noerr-Pennington* doctrine applies outside antitrust context as "Petition Clause immunity"); *Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *5-6 (S.D.N.Y. Aug. 21, 2007). Any KCPA claim based on those statements fails.

Regardless, the alleged congressional statements suffer the same defects as the others. The State does not allege particularized facts under Rule 9(b) explaining *how* the alleged testimony was false or misleading. On the contrary, the Complaint contains factual allegations consistent with the congressional testimony, such as the allegations that "certain sophisticated payor clients receive a portion of the [payments from manufacturers] from their particular pharmacy benefit manager." Compl. ¶¶ 357, 376.

### f.    "List Prices"

The State's allegations that the PBMs failed to disclose knowledge of a "false list price" (Compl. ¶ 327, 408) also fail Rule 8's plausibility and Rule 9(b)'s particularity requirements. For one thing, the State fails to allege that the list prices were, in fact, false. At best, the State asserts that list prices have become "untethered from the Manufacturers' net prices." *Id.* ¶ 323. But the State immediately undercuts that theory by then defining net prices as calculated directly from list prices. *See id.* ¶ 323 n.10. That list price, or Wholesale Acquisition Cost (WAC) (Compl ¶ 259), cannot be fraudulent. On the contrary, by statute, WAC is defined as the "manufacturer's list price for the drug or biological to wholesalers or direct purchasers . . . , *not including prompt pay or other discounts, rebates, or reductions in price*." 42 U.S.C. § 1395w-3a(c)(6)(B) (emphasis added). The State's contradictory allegations fail Rule 8's plausibility standard. And in any case, the Complaint confirms that the "Manufacturer Defendants," not the PBMs, set those prices. *See* Compl. ¶¶ 241-46, 248-49, 254, 394-402.

### 2.    The State fails to allege any duty to disclose.

The State's allegations of concealment and omissions (*e.g.*, Compl. ¶¶ 408, 429) also fail to support a KCPA claim because the State does not allege any duty to disclose. "Under K.S.A. 50-626(b)(3) of the KCPA, an allegation of deception by failing to fully disclose material facts requires proof of the willful failure to state a material fact or the willful concealment, suppression, or omission of a material fact." *Williamson v. Amrani*, 152 P.3d 60, 73 (Kan. 2007), *superseded by statute on other grounds, as stated in Kelly v. VinZant*, 197 P.3d 803 (Kan. 2008). A willful failure to disclose requires that there first be "a duty to disclose the fact." *Id.* A duty to disclose arises only if "the party knows the other party is entering a transaction under a mistake as to the facts and the other, 'because of the relationship between them, the customs in trade, or other objective circumstances, would reasonably expect disclosure of such facts.'" *Id.* (quoting *OMI*

*Holdings, Inc. v. Howell*, 918 P.2d 1274, 1300-01 (Kan. 1996); *see Marksberry v. FCA US LLC*, 606 F. Supp. 3d 1075, 1083 (D. Kan. June 9, 2022) (Melgren, C.J.).

The State comes nowhere close to plausibly alleging the existence of any duty between PBMs and consumers. There are no allegations of any sort of special relationship—indeed, any relationship at all—or other circumstance that could create a duty. And courts uniformly have rejected attempts to impose a duty to disclose pricing arrangements.[3] Because the Complaint fails to allege any facts giving rise to a duty to disclose, the State's concealment and omission allegations fail. *See Marksberry*, 606 F. Supp. 3d at 1083.

> **D.      The State fails to plead KCPA unconscionability claims.**

The KCPA prohibits "unconscionable act[s]" and "practice[s]." Kan. Stat. Ann. § 50-627(a). While the KCPA does not define "unconscionability," it sets forth a list of "statutory examples of unconscionable acts" to "provide[] context for the consideration of the term." *State ex rel. Stovall v. DVM Enters., Inc.*, 62 P.3d 653, 657-58 (Kan. 2003) (citing Kan. Stat. Ann. §§ 50-627(b)(1)-(7)).

The Complaint alleges that the PBM Defendants "induced" Kansas diabetics to enter into an "excessively one-sided" transaction in favor of Defendants, and rattles off a number of the statutory examples of "unconscionable" conduct. Compl. ¶ 465 (quoting Kan. Stat. Ann. § 50-627(b)). These claims fail for two reasons. First, the Complaint fails to allege with particularity that the PBMs wield unequal bargaining power—or indeed any "bargaining power" at all—over consumers. Second, the Complaint fails to allege facts to support any of the statutory bases for unconscionability.

---

[3] *E.g.*, *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1312-14 (11th Cir. 2000); *Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 70-71 (1st Cir. 1998); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997); *Sullivan v. Lab. Corp. of Am. Holdings*, 2018 WL 1586471, at *4-5, *8-9 (M.D.N.C. Mar. 28, 2018).

*First*, the Complaint fails to allege unequal bargaining power. "Transactions that merely appear unfair, or in retrospect are bad bargains, do not state a[n unconscionability] claim under the KCPA." *Gonzales v. Assocs. Fin. Serv. Co.*, 967 P.2d 312, 328 (Kan. 1998). Instead, "there must be some element of deceptive bargaining conduct present as well as unequal bargaining power to render the contract between the parties unconscionable." *DVM Enters., Inc.*, 62 P.3d at 658; *see State ex rel. Stovall v. ConfiMed.com, L.L.C.*, 38 P.3d 707, 713 (Kan. 2002). In other words, "[a]n unconscionable act or practice requires both supplier deception and unequal bargaining power." *Schneider v. U.S. Bank, N.A.*, 2020 WL 4673159, at *6 (D. Kan. Aug. 12, 2020).

The Complaint does not allege unequal bargaining power because the PBM Defendants do not bargain or contract with Kansas diabetics at all—they negotiate with manufacturers, health-plan payors, and pharmacies. Those counterparties all are "sophisticated business entities." *SMD Invs. Ltd. v. Raytheon Aircraft Co.*, 2006 WL 580968, at *8 (D. Kan. Mar. 8, 2006). The State fails to allege "that the transactions were excessively one-sided." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 2012 WL 4794355, at *3 (D. Kan. Oct. 3, 2012); *see Dana v. Heartland Mgmt. Co., Inc.*, 301 P.3d 772, 784-85 (Kan. Ct. App. 2013).

Inasmuch as the State alleges that the PBM Defendants used their market power to fix insulin prices, those claims fail as a matter of law because "allegations of price fixing . . . are not the kind of conduct prohibited under [the KCPA]." *In re Graphic Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1030 (N.D. Cal. 2007) (applying KCPA). "Despite the KCPA's seemingly broad language, the Supreme Court of Kansas has distinguished between consumer harms redressable thereunder and pricing harms governed by the Kansas antitrust statute." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584 (M.D. Pa. 2009) (quoting *Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 306-08 (Kan. 1988) (applying KCPA).

16

Courts, therefore, routinely reject attempts to "reformulate . . . antitrust claims to state a claim under the KCPA." *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1153 (applying KCPA), *judgment modified in part on other grounds*, 2007 WL 3331291 (E.D. Mo. 2007); *see In re Graphic Processing Units Antitrust Litig.,* 527 F. Supp. 2d at 1030.

*Second*, the Complaint's conclusory recitation of the statutory elements does not establish entitlement to relief. The State alleges that the PBM Defendants "took advantage of the inability of the consumer reasonably to protect [his or her] interests," and that the transactions were "excessively one-sided." Compl. ¶ 465 (quoting Kan. Stat. Ann. §§ 50-627(b)(1), (5)). As explained, these allegations fail because they are unsupported by any facts establishing unequal bargaining power.

The State's claim that the PBM Defendants "made a misleading statement of opinion" upon which Kansas consumers were "likely to rely" fails as well. *Id.* ¶ 465 (quoting Kan. Stat. Ann. § 50-627(b)(6)). The Complaint does not contain any facts explaining "who, what, where, and how" the State or any Kansas resident may have relied on the representations. *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1045 (D. Kan. 2018).

Finally, the State cannot establish that the price Kansas diabetics paid for insulin "grossly exceeded the price at which similar property . . . w[as] readily obtainable in similar transactions by similar consumers." Compl. ¶ 645 (quoting Kan. Stat. Ann. § 50-627(b)(2)). The State does not allege a "fair market retail price" that is "readily available" to similarly situated consumers. *See Remco Enters., Inc. v. Houston*, 677 P.2d 567, 572 (Kan. Ct. App. 1984). The State alleges two comparators, both of which are inapplicable. The State first alleges, without elaboration, that diabetics and payors in Europe and Canada "pay significantly less" for diabetes medications. Compl. ¶ 419. But insulin purchasers abroad clearly are not "similar consumers" to Kansas

diabetics, and the Complaint's conclusory statement fails to allege *any* comparator price at all. The State's allegation that the Department of Veterans Affairs "paid $16.7 billion less from 2011 through 2017" similarly is insufficient because it neither speaks to the price offered to diabetics in Kansas nor to the price involved in PBM-negotiated, non-federal transactions. *Id.* ¶ 420. Because the State fails to allege any "evidence of other . . . sales, or even evidence of the fair market price" of the challenged transactions, there are no plausible allegations that prices exceeded those of similar transactions by similar consumers. *Shigo v. Clark*, 2022 WL 2966320, at *6 (D. Kan. July 27, 2022); *see Geico Indem. Ins. Co. v. Kannaday*, 2007 WL 2990552, at *2 (D. Kan. Oct. 11, 2007).

## II. THE STATE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

### A. The State's unjust enrichment allegations fail Rule 9(b)'s particularity requirement.

The State's unjust-enrichment claim is grounded in allegations of deceptive and fraudulent behavior. *See* Compl. ¶ 473. Accordingly, Rule 9(b) applies. *Thompson*, 505 F. Supp. 2d at 932; *Thompson v. Jiffy Lube Int'l, Inc.*, 2006 WL 8406742, at *7 (D. Kan. June 13, 2006). For the reasons discussed above as to the KCPA claim, *see supra* at I.B, I.C, the Complaint fails that standard.

### B. The State's allegations of express contracts foreclose any claim for unjust enrichment.

Unjust enrichment is "a modern version of the older doctrine of quasi-contract." *Corvias Mil. Living, LLC v. Ventamatic, Ltd.*, 450 P.3d 797, 804 (Kan. 2019). It does not authorize a demand for anything a plaintiff believes is "unjust." Rather, to recover on an unjust-enrichment theory, the State must show that there "lies in a promise implied in law that one will restore to the

person entitled thereto that which in equity and good conscience belongs to that person."[4] *Univ. of Kan. Hosp. Auth. v. Bd. of Comm'rs*, 327 P.3d 430, 441 (Kan. 2014). Because "unjust enrichment is not available if there is an enforceable express agreement," the State must show that no legal contract exists that covers its claim. *Meyer v. Christie*, 634 F.3d 1152, 1162 (10th Cir. 2011) (citing *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co.*, 130 F.3d 950, 957 (10th Cir.1997)).

To the extent the State brings its unjust-enrichment claim in its capacity as a payor, that claim is foreclosed by the State's own contracts. The State alleges that the PBMs contract for insulin (and other products) with manufacturers (Compl. ¶ 274), payors (*id.* ¶¶ 324, 461), and pharmacies (*id.* ¶¶ 270, 377, 461). The State also affirmatively alleges that it received at-issue PBM and pharmacy services under a PBM contract. *Id.* ¶¶ 324, 369, 403, 431, 461. Indeed, another federal court recently dismissed a nearly identical unjust-enrichment claim brought by Harris County, Texas, because the claims "sound[ed] more in contract than in quasi-contract" given that, in the complaint's "own words, the PBM Defendants 'contract with payors.'" *Harris Cnty. v. Eli Lilly & Co.*, 2022 WL 479943, at *14 (S.D. Tex. Feb. 16, 2022).

Recognizing that infirmity, the State alleges that "[t]here is no express contract governing the dispute at-issue." Compl. ¶ 480. But the Court is not required to accept as true that conclusory and implausible allegation (*Iqbal*, 556 U.S. at 678)—particularly where, as here, the State's conclusory assertion is directly contradicted by its own factual allegations regarding PBM contracts with manufacturers, payors, and pharmacies that apply to the at-issue insulin products. The Court should reject the State's assertion and dismiss its unjust enrichment claim.

---

[4] "To establish an unjust enrichment claim, a plaintiff must establish (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated and has knowledge of the benefit; and (3) the defendant accepted and retained the benefit under circumstances that make the retention unjust." *Univ. of Kan. Hosp. Auth. v. Bd. of Comm'rs*, 327 P.3d 430, 441 (Kan. 2014).

## C.  A claim for unjust enrichment is inconsistent with the State's *parens patriae* capacity.

The State's *parens patriae* capacity extends only to its "interest apart from the interests of particular private parties." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982); *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1469 (10th Cir. 1993).  As such, the State has not—and cannot—state any *parens patriae* claim for unjust enrichment.  The *parens patriae* capacity involves "the right of a State to sue . . . to prevent or repair harm to its quasi-sovereign interests." *Sierra Club v. Two Elk Generation Partners, Ltd. P'ship*, 646 F.3d 1258, 1268 (10th Cir. 2011) (citation omitted).  Quasi-sovereign interests are interests "in the health and well-being—both physical and economic—of its residents in general." *State ex rel. Sullivan v. Lujan*, 969 F.2d 877, 883 (10th Cir. 1992) (quoting *Alfred L. Snapp & Sons, Inc.*, 458 U.S. at 608).  In its articulation of a separate interest, "the State must be more than a nominal party," and cannot "merely advanc[e] the rights of individual injured citizens." *Satsky*, 7 F.3d at 1469.

The State's *parens patriae* capacity is inconsistent with an unjust-enrichment claim because unjust enrichment is a remedy tied to a specific individual.  "[T]he proper measure of damages for unjust enrichment is restitution of the value of the benefit *conferred upon the defendant*." *All Brands Distrib., LLC v. Vital Pharms., Inc.*, 2022 WL 3646274, at *2 (D. Kan. Aug. 24, 2022) (Melgren, C.J.) (emphasis added), *appeal filed*.  Yet, in a *parens patriae* action, "a state may not sue to assert the rights of private individuals." *Satsky*, 7 F.3d at 1469.  When the State is "merely advancing the rights of individual injured citizens," a *parens patriae* claim is inappropriate. *Satsky*, 7 F.3d at 1469; *see also Snapp*, 458 U.S. at 600 (observing that *parens patriae* "does not involve the States stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves").

Courts routinely hold that States do not have *parens patriae* standing for unjust-enrichment claims. *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1079, 1098-1104 (S.D. Cal. 2018) (applying Kansas law); *Gov't of Puerto Rico v. Carpenter Co.*, 442 F. Supp. 3d 464, 478-79 (D.P.R. 2020); *In re Auto. Parts Antitrust Litig.*, 2021 U.S. Dist. LEXIS 8201, at *4-9 (E.D. Mich. Jan. 15, 2021). The same result is appropriate here.

## III.    THE STATE HAS NOT PLAUSIBLY ALLEGED A CIVIL CONSPIRACY.

The State also alleges a civil conspiracy by all Defendants to violate the KCPA and to commit unjust enrichment. Compl. ¶ 482. That claim fails for two reasons.

*First*, civil conspiracy "is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy." *Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984). The State's civil conspiracy claim should be dismissed because its underlying causes of action fail as a matter of law. *See supra* at I, II.

*Second*, the State's civil conspiracy claim independently fails because the State does not adequately allege any agreement to violate the KCPA or obtain an unjust enrichment. "[T]he elements of a civil conspiracy include: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Stoldt*, 678 P.2d at 161 (quotation omitted); *see Banks v. Opat*, 814 F. App'x 325, 337 (10th Cir. 2020). When a plaintiff has not alleged any set of facts that demonstrates the existence of an agreement by the defendants to accomplish an unlawful purpose, dismissal is required. *See Stoldt*, 678 P.2d at 161-62; *Aeroflex Wichita, Inc. v. Filardo*, 275 P.3d 869, 881-82 (Kan. 2012).

The Complaint does not allege any particularized facts of an agreement to violate the law. To be sure, the State alleges communication, contact, and meetings among the Defendants. *See, e.g.*, Compl. ¶¶ 23, 88, 122, 127, 177, 189, 290, 293, 301, 328. But even taken as true, none of

those allegations plausibly suggests conspiracy. They suggest, at most, that the Defendants had an *opportunity* to conspire. Those threadbare allegations fall well short of what is required under Rule 8 or Rule 9(b). Because the State has "simply offer[ed] speculation and conjecture that [the defendants'] actions were totally conspiratorial," *Buridi v. Idbeis*, 2016 WL 6905899, at *8 (D. Kan. Nov. 22, 2016), its civil conspiracy claim must be dismissed.

## IV. ANY CLAIMS BY THE STATE IN ITS CAPACITY AS A HEALTH PLAN OPERATOR OR PAYOR ARE TIME-BARRED.

When the State performs a "proprietary"—as opposed to "governmental"—function, the State is subject to the statute of limitations. *Newman Mem. Hosp. v. Walton Constr. Co.*, 149 P.3d 525, 535-37 (Kan Ct. App. 2007). "Governmental functions are those performed for the general public with respect to the common welfare for which no compensation or particular benefit is received." *Id.* at 535-36. Proprietary functions, by contrast, "are exercised when an enterprise is commercial in character or is usually carried on by private individuals or is for the profit, benefit, or advantage of the governmental unit conducting the activity." *Id.* at 536. "Determination of whether a cause of action arises out of a proprietary or governmental function turns on an analysis of the underlying activity of the public body and not the purpose for which the City brings the lawsuit." *City of Wichita, Kan. v. U.S. Gypsum Co.*, 72 F.3d 1491, 1497 (10th Cir. 1996).

Here, any claims the State brings in its capacity as a health-plan operator or payor are clearly proprietary. State-run health plans exist alongside—and perform the same functions as— plans "carried on by private individuals." *Newman*, 149 P.3d at 536. Those plans are thus "commercial in character," and "benefit . . . the governmental unit conducting the activity." *Id.* As a result, any claims the State may make in its capacity as a payor are subject to the statute of limitations. *Id.* at 535-37 (holding that construction of a county hospital was a proprietary

function); *City of Wichita*, 72 F.3d at 1498 (holding that the operation of a convention center was a proprietary function).

The statute of limitations requires dismissal of any such claims. *Vreeland v. Fisher*, 682 F. App'x 642, 646 (10th Cir. 2017). The limitations periods for the State's unjust-enrichment and KCPA claims are three years. Kan. Stat. Ann. § 60-512. "[A] statute of limitations begins to run . . . when the elements are present and the plaintiff could maintain a successful suit." *Socophi S.P.R.L. v. Airport Sys. Int'l, Inc.*, 30 F. App'x 862, 864 (10th Cir. 2002) (citing *Pancake House, Inc. v. Redmond ex rel. Redmond*, 716 P.2d 575, 579 (Kan. 1986)). Kansas makes no exception for so-called continuing torts. *See N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 613 (10th Cir. 2008) (holding continuing-tort exception applies only to flooding-based nuisance claims and certain shareholder derivative actions).

Under that rubric, the State's claims in this case accrued long before the limitations period. The State, as a payor, necessarily would have been aware of price increases "[o]ver the course of the last fifteen years." Compl. ¶ 13. The State's complaint borrows from pleadings filed in earlier lawsuits challenging the same conduct—including a lawsuit filed more than five years ago on February 2, 2017. *See* Complaint, *In re Insulin Pricing Litig.*, No. 17-cv-699 (D.N.J. Feb. 2, 2017), ECF No. 1. And the State discusses government investigations and hearings related to PBMs' interactions with pharmaceutical manufacturers that began as early as 2011. *E.g.*, Compl. ¶¶ 88, 146, 147, 413. To the extent that the State brings any KCPA or unjust-enrichment claims in its capacity as a health-plan operator or payor, those claims are clearly time-barred.

That analysis also requires dismissal of any civil-conspiracy claims the State brings in its capacity as a health-plan operator or payor. "A civil conspiracy is not actionable under Kansas law without commission of some wrong giving rise to a tortious cause of action independent of

conspiracy." *Meyer*, 634 F.3d at 1156. "When the underlying wrong is time barred, the civil conspiracy claim is time barred as well." *Jarvis v. Nationwide Ins. Co. of Am.*, 449 P.3d 454, 2019 WL 4725239, at *7 (Kan. Ct. App. 2019); *Meyer Land & Cattle Co. v. Lincoln Cnty. Conservation Dist.*, 31 P.3d 970, 977 (Kan. Ct. App. 2001). Like the limitations periods for the KCPA and unjust enrichment claims, the limitations period for civil conspiracy commences upon occurrence of the wrongful act, not its discovery. *See Masters v. Daniel Int'l Corp.*, 1992 WL 405307, at *3 (D. Kan. Dec. 3, 1992) ("In Kansas, a civil conspiracy action accrues with each overt act that is alleged to have caused the plaintiff harm."); *McLoughlin v. Golf Course Superintendents Ass'n of Am.*, 1990 WL 129204, at *14 (D. Kan. Aug. 16, 1990). As explained above, the alleged "underlying wrongs" for the civil conspiracy claim occurred outside of both the underlying applicable three-year limitations periods. In other words, insofar as the State's KCPA and unjust enrichment claims are time-barred, the State's civil conspiracy claim also fails.

## V.  THE COURT SHOULD DISMISS THE PBMS' CORPORATE PARENTS AND AFFILIATE ENTITIES.

The PBMs' corporate parents—CVS Pharmacy, Inc., CVS Health Corporation, Evernorth Health Inc.—should be dismissed from this action.

"It is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). In Kansas, "the presumption of corporate separateness is only overcome with proof of two elements: (1) 'allowing the legal fiction of a separate corporate structure would result in an injustice toward the plaintiff' and (2) in consideration of ten factors (the *Doughty* factors), a subsidiary is an alter ego of its parent."[5] *Cyprus Amax Mins. Co. v.*

---

[5]     The 10 factors are whether: (1) the parent corporation owns all or a majority of the capital stock of the subsidiary; (2) the corporations have common directors or officers; (3) the parent corporation

*TCI Pac. Commc'ns, LLC*, 28 F.4th 996, 1007 (10th Cir. 2022) (quoting *Doughty v. CSX Transp., Inc.*, 905 P.2d 106, 111 (Kan. 1995)).  "Exercise of some degree of supervision by a 100% stockholder is not sufficient to render the subsidiary its instrumentality or alter ego."  *GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 808 F. App'x 655, 662 (10th Cir. 2020) (citation omitted).  Nor does the fact that two corporations have officers or directors in common warrant treating the two corporations as one.  *Schmid v. Roehm GmbH*, 544 F. Supp. 272, 275 (D. Kan. 1982).  Because the State has alleged insufficient facts demonstrating that the PBMs are alter egos of their corporate parents, the claims against the corporate parents must be dismissed.  *See, e.g.*, *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *4-5 (S.D. Miss. Aug. 29, 2022) ("[T]he Court finds it inappropriate to pierce the corporate veil" when the State at most alleges certain defendants "share corporate officers, company policies, and stock ownership."); *Eli Lilly*, No. 21-cv-00674 (S.D. Miss. Aug. 15, 2022), slip op. at 14-16 (concluding that plaintiff failed to allege facts supporting veil piercing as to OptumRx parents and affiliates); *Moeckel v. Caremark Rx Inc.*, 385 F. Supp. 2d 668, 674 (M.D. Tenn. 2005) (dismissing PBM's parent from suit).

The allegations against CVS Pharmacy, Inc. are "insufficient to plausibly plead [its] involvement in the alleged" scheme, as another federal court recently found based on nearly identical allegations.  *See Mississippi ex. rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *5

---

finances the subsidiary; (4) the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise caused its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Cyprus Amax Mins. Co. v. TCI Pac. Commc'ns, LLC*, 28 F.4th 996, 1007 (10th Cir. 2022).  These listed factors are only "guidelines" and "[n]o single factor or combination of factors is necessarily conclusive," rather the factors are to be "taken as a whole with due regard to the extent to which they were and were not fully satisfied."  *Id.* at 1008 (internal citations omitted).

(S.D. Miss. Aug. 29, 2022) (dismissing all claims against CVS Pharmacy). The allegations in the Complaint do not warrant a different conclusion. Consider the State's allegations against CVS Pharmacy. Beyond alleging that CVS Pharmacy is a parent or affiliate of certain PBM subsidiaries, the State alleges only that it operates retail pharmacies and provides retail pharmacy services. Compl. ¶¶ 89-93. The State, however, has not pled any misconduct by *retail pharmacies*. The Complaint divides the defendants into just two categories—"PBM Defendants" and "Manufacturer Defendants." *Id.* ¶¶ 5, 6. The State never alleges that CVS Pharmacy had any involvement in the alleged PBM-Manufacturer conduct that the State challenges. The State alleges only that CVS Pharmacy retained the difference between the acquisition costs for the drugs at issue and the amounts received from payors. *Id.* ¶ 117. But it is standard practice for pharmacies (and indeed all business) to retain the difference between the amount at which a product is purchased and the amount for which it is sold—and the State does not allege otherwise. The allegation that CVS Pharmacy was paid for drugs that it dispensed and its services in connection therewith, *like all retail pharmacies*, is insufficient to support a plausible inference that CVS Pharmacy was involved in the alleged scheme.

The State has not stated a plausible claim for relief against the PBMs' corporate parents. Accordingly, the Court should dismiss all claims against CVS Pharmacy, Inc., CVS Health Corporation, and Evernorth Health Inc.

## CONCLUSION

The State fails to state a valid claim against the PBMs. Accordingly, the Court should dismiss with prejudice the State's claims against the PBM Defendants.

Dated:  March 20, 2023    Respectfully submitted,

*/s/ Casey P. Murray*

Casey P. Murray,       #22189
Emily N. Reed,        #73908
**SPENCER FANE LLP**
1000 Walnut, Suite 1400
Kansas City, MO 64106
Tel: (816) 474-8100
Fax: (816) 474-3216
cmurray@spencerfane.com
ereed@spencerfane.com
*Attorney for CVS Health Corporation;*
*CVS Pharmacy, Inc.; Caremark Rx, LLC;*
*Caremark PCS Health, LLC; and Caremark, LLC*

OF COUNSEL:

Enu Mainigi (*pro hac* vice)
Craig Singer (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)
A. Joshua Podoll (*pro hac vice*)
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com

*/s/ Taylor Concannon Hausmann*

Taylor Concannon Hausmann, KS #26668
**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, MO 64112
T: 816.983.8319
F: 816.983.8080
taylor.hausmann@huschblackwell.com
*Attorney for Evernorth Health, Inc. (formerly*
*Express Scripts Holding Company); Express*
*Scripts, Inc.; Express Scripts Administrators, LLC;*
*ESI Mail Pharmacy Service, Inc.; Express Scripts*
*Pharmacy, Inc.; and Medco Health Solutions, Inc.*

OF COUNSEL:

Jason R. Scherr, *Pro Hac Vice*
jr.scherr@morganlewis.com
Patrick A. Harvey, *Pro Hac Vice*
patrick.harvey@morganlewis.com
**MORGAN LEWIS & BOCKIUS, LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001


*/s/ Bradley J. Schlozman*
Bradley J. Schlozman (KS Bar #17621)
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, KS 67206
T: (316) 660-6296
F: (316) 630-8466
bschlozman@hinklaw.com
*Attorney for OptumRx Inc.*

OF COUNSEL:

Brian D. Boone (*pro hac vice*)
**ALSTON & BIRD LLP**
101 S. Tryon St., Ste. 4000
Charlotte, NC 28280
T: (704) 444-1000
brian.boone@alston.com

Kelley C. Barnaby (*pro hac vice*)
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004
T: (202) 239-3300
kelley.barnaby@alston.com

D. Andrew Hatchett (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
T: (404) 881-7000
andrew.hatchett@alston.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2023 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Casey P. Murray*
*Attorney for for CVS Health Corporation;*
*CVS Pharmacy, Inc.; Caremark Rx, LLC;*
*Caremark PCS Health, LLC; and Caremark, LLC*