# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STATE OF KANSAS, ex rel., KRIS W.
KOBACH, ATTORNEY GENERAL,

        Plaintiff,

   v.

ELI LILLY AND COMPANY et al.,

        Defendants.

Case No. 23-cv-04002-EFM-RES

## REPLY IN SUPPORT OF MANUFACTURER DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

PAGE

INTRODUCTION.................................................................................................... 1

ARGUMENT........................................................................................................... 2

I.     The Opposition Confirms that the Complaint Fails to State a KCPA Claim...................... 2

    A.     The Opposition Identifies No Deceptive Conduct.................................................. 2

    B.     The Complaint Does Not Satisfy Rule 9(b).......................................................... 6

    C.     The Opposition Identifies No Actionable Omission............................................... 8

    D.     The Opposition Fails to Plead Unconscionability ............................................... 10

II.    The State Has Failed to Plead Unjust Enrichment........................................................... 13

III.   The State Has Failed to Plead a Civil Conspiracy .......................................................... 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012) ..................................................... 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................ 15

*Boris v. Wal-Mart Stores, Inc.*,
  35 F. Supp. 3d 1163 (C.D. Cal. 2014) ...................................... 4

*Burton v. R.J. Reynolds Tobacco Co.*,
  884 F. Supp. 1515 (D. Kan. 1995) ............................................ 7

*Cavlovic v. J.C. Penney Corp., Inc.*,
  2018 WL 2926433 (D. Kan. June 7, 2018) ................................ 4

*Croyder v. Hetley*,
  2016 WL 2985452 (D. Kan. July 11, 2017) .............................. 10

*De Gorter v. FTC*,
  244 F.2d 270 (9th Cir. 1957) ..................................................... 4

*Dodson v. U-Needa Self Storage, LLC*,
  96 P.3d 667 (Kan. Ct. App. 2004) ............................................ 13

*FTC v. Affiliate Strategies, Inc.*,
  2010 WL 11470099 (D. Kan. June 4, 2010) .............................. 7

*Gallivan v. United States*,
  943 F.3d 291 (6th Cir. 2019) ..................................................... 8

*Giant Food, Inc. v. FTC*,
  322 F.2d 977 (D.C. Cir. 1963) ................................................... 4

*Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*,
  910 P.2d 8397 (Kan. 1996) ...................................................... 14

*In re Direct Purchaser Insulin Pricing Litig.*,
  2021 WL 2886216 (D.N.J. July 9, 2021) ................................... 6

*In re Graphics Processing United Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................................. 10

*In re Insulin Pricing Litig.*,
   2019 WL 643709 (D.N.J. Feb. 15, 2019) ................................................................. 6

*In re Motor Fuel Temperature Sales Practices Litig.*,
   867 F. Supp. 2d 1124 (D. Kan. 2012) ................................................................. 9, 12

*Jamieson v. Vatterott Educational Center, Inc.*,
   473 F. Supp. 2d 1153 (D. Kan. 2007) ................................................................. 7

*Kucharski-Berger v. Hill's Pet Nutrition, Inc.*,
   494 P.3d 283 (Kan. Ct. App. 2021) ................................................................. 4

*Louisburg Bldg. & Dev. Co. v. Albright*,
   252 P.3d 597 (Kan. Ct. App. 2011) ................................................................. 11

*Luttrell v. Brannon*,
   2018 WL 3032993 (D. Kan. Jun. 19, 2018) ................................................................. 11

*M.F. v. ADT, Inc.*,
   357 F. Supp. 3d 1116 (D. Kan. 2018) ................................................................. 3, 7

*Maxwell v. St. Francis Health Center*,
   2017 WL 4037732 (D. Kan. Sept. 13, 2017) ................................................................. 10

*Meschke v. OrthAlliance, Inc.*,
   2002 WL 1398635 (D. Kan. June 24, 2002) ................................................................. 9

*MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*,
   2019 WL 1418129 (D.N.J. Mar. 29, 2019) ................................................................. 6

*Nieberding v. Barrette Outdoor Living, Inc.*,
   302 F.R.D. 600 (D. Kan. 2014) ................................................................. 11

*Ray v. Ponca/Universal Holdings, Inc.*,
   913 P.2d 209 (Kan. Ct. App. 1995) ................................................................. 4

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
   517 F. Supp. 2d 1125 (E.D. Mo. 2007) ................................................................. 3, 10

*Spiegel, Inc. v. FTC*,
   411 F.2d 481 (7th Cir. 1969) ................................................................. 4

*Spires v. Hosp. Corp. of Am.*,
   289 F. App'x 269 (10th Cir. 2008) ................................................................. 13

*State ex rel. Kline v. Transmasters Towing*, |
    168 P.3d 60 (Kan. Ct. App. 2007) ........................................ 11

*State ex rel. Stephan v. Brotherhood Bank & Trust Co.*,
    649 P.2d 419 (Kan. Ct. App. 1982) ...................................... 8

*Thompson v. Jiffy Lube Int'l, Inc.*,
    505 F. Supp. 2d 907 (D. Kan. 2007) ..................................... 8

*Unruh v. Purina Mills, LLC*,
    221 P.3d 1130 (Kan. 2009) ................................................ 10

*Vess v. Ciba-Geigy Corp*,
    317 F.3d 1097 (9th Cir. 2003) ............................................. 8

*Via Christi Reg'l Med. Ctr., Inc. v. Reed*,
    314 P.3d 852 (Kan. 2013) ........................................... 11, 12, 13

*Weckhorst v. Kan. State Univ.*,
    241 F. Supp. 3d 1154 (D. Kan. 2017) .................................. 7

## Statutes

42 U.S.C. § 1395w-3a(c)(6)(B) ............................................ 5

Kan. Stat. Ann. § 50-627(b)(2 ........................................... 12

Kan. Stat. Ann. § 50-627(b)(3) ........................................... 12

## Other Authority

Fraud and Abuse: Removal of Safe Harbor Protection for Rebates Involving Prescription
    Pharmaceuticals, 85 Fed. Reg. 76666 (Nov. 30, 2020) ............................ 6

**INTRODUCTION**

Kansas's opposition ("Opp.") confirms that the State fails to state any claim against Manufacturers. The State asserts that list prices for insulin are somehow deceptive and unconscionable because they do not reflect rebates and discounts that Manufacturers must pay to secure placement on PBM formularies. But as the opening brief explained, federal law *requires* Manufacturers to report list prices for their drugs that exclude rebates, discounts, and other reductions in price. What is more, the complaint does not identify even a single deceptive act allegedly committed by any Manufacturer. The opposition fails to meaningfully engage with these arguments, instead falling back on misdirection and semantics. But stripped of rhetoric, the State's circular arguments fail to salvage its claims.

The State's core KCPA theory is that Manufacturers misled the public into thinking that the list prices for their insulins approximate the net prices Manufacturers receive after factoring in the rebates and discounts provided to wholesalers, PBMs, and other downstream entities. Such a claim would make sense only if Manufacturers had ever represented that their list prices *do* bear some relationship to their net prices. The complaint never alleges anything of the sort. This is not surprising, as reporting list prices that reflect net prices would violate federal law. Absent any cognizable allegation of deception, the State's KCPA claim fails under both the deceptive and unconscionable conduct prongs of the statute.

Unable to identify even a single instance of deception or misrepresentation—much less with the particularity required by Rule 9(b)—the opposition instead pivots to two new theories: that publishing list prices in compliance with federal law is somehow in and of itself deceptive, and that Manufacturers failed to disclose that their list prices do not include rebates and other price discounts. But as Manufacturers explained, publishing a price, without more, is not

actionable under the KCPA. Nor is a claim that prices are too high, without allegations of deception. And because they have no direct involvement with, and owe no fiduciary duty to, any Kansas consumers, Manufacturers cannot be subject to KCPA liability for purported omissions.

The State's unjust enrichment and civil conspiracy claims are similarly deficient. As to unjust enrichment, the opposition ignores Tenth Circuit law and points to no allegations that Manufacturers received a benefit from the State or any Kansas consumer, let alone that Manufacturers retained such a benefit "unjustly." The civil conspiracy claim likewise fails because the complaint does not plausibly allege that Manufacturers entered an agreement to violate the law, and the opposition expressly disclaims reliance on any antitrust theory.

The claims against Manufacturers should be dismissed in their entirety.

## ARGUMENT

## I. The Opposition Confirms that the Complaint Fails to State a KCPA Claim

The State fails to adequately allege that Manufacturers committed deceptive or unconscionable acts. Because the complaint is devoid of any allegation of deceptive conduct or a misrepresentation made by any Manufacturer, the State cannot state a claim under any prong of the KCPA, no matter which pleading standard is applied. Br. 8-11, 13-15.

### A. The Opposition Identifies No Deceptive Conduct

Manufacturers' opening brief explained that list prices cannot be deceptive because they are exactly what they purport to be: the Wholesale Acquisition Cost ("WAC") of each Manufacturer's drugs, Br. 7-9, which is the price that drug wholesalers pay to acquire the products from Manufacturers. Compl. ¶ 260. The opposition offers no serious response, nor does it identify any specific price, or statement about pricing, made by any Manufacturer that was allegedly false or deceptive. Instead, the opposition resorts to counting adjectives in its

otherwise conclusory allegations, claiming that it adequately alleged deception because the complaint repeatedly labeled Manufacturers' list prices "false," "unlawful," or "inflated." Opp. 4 & n.11. But the pleading standards are about quality rather than quantity. And what the opposition tellingly does *not* do is identify any factual allegations that would support those oft-repeated descriptions. Instead, it rehashes the same conclusory statements from the complaint about the insulin pricing system as a whole, while failing to identify even a single allegedly deceptive act or misrepresentation made by any Manufacturer. When KCPA claims are this inadequately pled, as here, district courts routinely dispose of them at the pleading stage. Br. 9-10; *see also M.F. v. ADT, Inc.*, 357 F. Supp. 3d 1116, 1137 (D. Kan. 2018), *aff'd sub nom. Frost v. ADT, LLC*, 947 F.3d 1261 (10th Cir. 2020).

Unable to identify any alleged misrepresentation or deceptive acts, the opposition instead asserts that publishing allegedly "false" prices is itself a deceptive act. Opp. 13-14. But the opposition fails to cite any authority endorsing such a theory under the KCPA. In fact, courts have *rejected* such an approach, concluding that "publish[ing] pricing sheets" and the "posting of prices" at purportedly "artificially high and supracompetitive prices" do not constitute an "oral or written misrepresentation" under the KCPA. *See Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1152-53 (E.D. Mo. 2007), *vacated in part on other grounds*, 2007 WL 3331291 (dismissing KCPA claim alleging that defendants published misleading "pricing sheets . . . to give the impression that they were selling [the accused products] at competitive prices, when in fact they were selling [them] at artificially high and supracompetitive prices" for failing to allege any deceptive act). This is not a controversial proposition, since a product's price is *not* "a representation or statement about the product: the price is simply the amount at which the merchant offers to sell the product." *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d

1163, 1169-70 (C.D. Cal. 2014). The State cannot satisfy its burden to plead deception by simply pointing to the public prices of Manufacturers' products.

The out-of-circuit and out-of-context cases the opposition cites in support of this theory serve as a reminder of what is missing here. In one group of cases, retailers picked an arbitrary number, and claimed that the price was discounted from that number, despite the fact that products were "never sold at the advertised 'regular' price." *See Cavlovic v. J.C. Penney Corp., Inc.*, 2018 WL 2926433, at *3 (D. Kan. June 7, 2018); *Spiegel, Inc. v. FTC*, 411 F.2d 481, 483 (7th Cir. 1969) (same).[1] That is not the case here. List prices are not arbitrary numbers. They are the *actual* price at which products are in fact sold to wholesalers before rebates and discounts are applied. Nor do (or can) the complaint or opposition identify any instance in which a Manufacturer claimed that its list prices were discounted from some other price.

In the second bucket of cases, the defendant made additional representations about its product beyond merely publishing a product price. *See Kucharski-Berger v. Hill's Pet Nutrition, Inc.*, 494 P.3d 283, 295 (Kan. Ct. App. 2021) (labeling pet food as requiring a prescription could be deceptive and misleading when used to justify a higher price); *Ray v. Ponca/Universal Holdings, Inc.*, 913 P.2d 209, 211 (Kan. Ct. App. 1995) (defendant allegedly reneged on promise of a reduced rate). There are no such allegations here. Indeed, the complaint does not allege that Manufacturers ever made any representations about their products, let alone to Kansas consumers.

The State's attempts to bolster its fictitious pricing claims and its inapposite case law are of no moment. First, the State attacks the statutory definition of WAC to distract from the fact

---

[1] *See also Giant Food, Inc. v. FTC*, 322 F.2d 977, 980-83 (D.C. Cir. 1963) ("mfr. List" prices weren't the usual and customary retail price); *De Gorter v. FTC*, 244 F.2d 270, 281 (9th Cir. 1957) (clothing was given arbitrary price from which salespersons negotiated).

that Manufacturers reported prices exactly as required by federal law. Opp. 21-24. According to

the State, the federal definition of WAC is irrelevant because it "only applies to how prices are

reported for the federal Medicare program." *Id*. at 21. But this assertion misrepresents how

pharmaceutical pricing works. Manufacturers set and report only one list price for each of their

products, at which all wholesalers purchase the drugs and then sell downstream across all

channels. Compl. ¶¶ 260-61. Because that single list price applies to the Medicare channel, as

well as all others, Manufacturers must comply with the requirements of 42 U.S.C. § 1395w-3a.

That means that Manufacturers must exclude rebates and other discounts from WAC.[2] The

State's attempt to cabin this statutory limitation as merely a component of the federal Medicare

program thus falls flat.

Second, the State argues that the definition of WAC does not apply to PBM rebates,

claiming that the statute's requirement that WAC prices "not includ[e] prompt pay or other

discounts rebates, or reductions in prices," 42 U.S.C. § 1395w-3a(c)(6)(B), only refers to rebates

or discounts provided to wholesalers, Opp. 23-24. But the opposition's attempt to read PBM

rebates out of the statutory definition is unavailing. While the statute describes WAC as "the

manufacturer's list price for the drug or biological to wholesalers or direct purchasers in the

United States," it requires Manufacturers to exclude *all* "discounts, rebates or reductions in

price" from that list price, regardless of recipient. 42 U.S.C. § 1395w-3a(c)(6)(B). Indeed, the

final rulemaking on which the State relies, Opp. 24 n.22, does not subtract wholesaler discounts

---

[2] The State's claim that the statutory definition of WAC "only concerns 'rebates,'" while
its allegations include a "variety of Manufacturer Payments," Opp. 22-23, is similarly off base.
Federal law is not so narrow; it prohibits manufacturers from including "prompt pay or other
discounts, rebates or reductions in price" in published WAC prices. 42 U.S.C. § 1395w-
3a(c)(6)(B). Manufacturers must therefore exclude all forms of consideration provided to
PBMs—including, but not limited to, rebates—from their list prices.

or PBM rebates from list prices. *See* Fraud and Abuse: Removal of Safe Harbor Protection for Rebates Involving Prescription Pharmaceuticals, 85 Fed. Reg. 76666, 76707 (Nov. 30, 2020).

Finally, the State cannot salvage its claim by relying on insulin cases decided under different laws. Opp. 13 n.17. Some are not consumer protection cases. *See In re Direct Purchaser Insulin Pricing Litig.*, 2021 WL 2886216, at *14-15 (D.N.J. July 9, 2021) (RICO claims). Some do not analyze deception or fraud. *See In re Insulin Pricing Litig.*, 2019 WL 643709, at *14-15 (D.N.J. Feb. 15, 2019) (New Jersey law). And none offers an analysis of how the Manufacturers' accurate statements of their prices to wholesalers could be false. In *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, for example, the discussion simply states that plaintiffs "alleged material, factual misrepresentations." 2019 WL 1418129, at *19 (D.N.J. Mar. 29, 2019) (New Jersey law). In short, none of these cases addresses the question at issue here: how it could constitute deception under Kansas law for Manufacturers to publish list prices in compliance with federal law. Nor do these cases absolve the State from its requirement to plead with sufficient particularity factual allegations showing that Manufacturers committed a deceptive or unconscionable act or practice under the KCPA.

### B. The Complaint Does Not Satisfy Rule 9(b)

The opposition also confirms that the State cannot satisfy the heightened pleading requirements of Rule 9(b). Although the State denies that it "lump[s] [Manufacturers] together," the opposition and the quotes it pulls from the complaint speak collectively of "Manufacturer Defendants," "Manufacturers' list prices," and "their officers and representatives." *E.g.*, Opp. 7. The opposition identifies no individual employees, nor does it identify any specific list price increase. Instead, it summarizes every increase for over 25 years. *Id*. at 8 (citing, *e.g.*, Compl. fig. 3). Moreover, the State does not identify which of these price increases was purportedly

artificial, nor does it allege that *all* price increases were artificial. Tellingly, the only

Manufacturer-specific statements the State identifies are *true* statements: namely, that

Manufacturers were forced to pay high rebates to secure formulary position.[3] *E.g.*, *id.* at 8;

Compl. ¶¶ 336-38. The complaint thus fails to plead the core ingredient of a deception claim—a

deceptive representation—with anything close to the specificity required under Rule 9(b). This

defect independently requires dismissal. *See ADT, Inc.*, 357 F. Supp. 3d at 1137 (dismissing

inadequately pled KCPA deceptive act claim for failure to comply with Rule 9(b)); *Weckhorst v.*

*Kan. State Univ.*, 241 F. Supp. 3d 1154, 1176 (D. Kan. 2017) (same); *Jamieson v. Vatterott*

*Educational Center, Inc.*, 473 F. Supp. 2d 1153, 1157 (D. Kan. 2007) (same).

The State attempts to argue that Rule 9(b) does not apply, pointing to a single outlier

case. Opp. 6 (citing *FTC v. Affiliate Strategies, Inc.*, 2010 WL 11470099, at *10 (D. Kan. June

4, 2010)). But as the opening brief explained, district courts otherwise uniformly apply Rule

9(b) to KCPA claims. Br. 8-11, 13; *see Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp.

1515, 1524 (D. Kan. 1995) ("[T]he policy reasons for requiring fraud actions to be pled with

particularity . . . apply equally to actions brought under the KCPA."). The single case cited by

the opposition does not support ignoring the clear weight of authority.

Despite acknowledging that "district courts have consistently held" that Rule 9(b) applies

to KCPA claims, the court in *Affiliate Strategies* pointed to a discussion of the investigatory

authority of the attorney general in a state court of appeals decision as justifying a new rule,

under which Rule 9(b) would not apply to actions brought by the state under the KCPA. 2010

WL 11470099, at *9-10 (citing *State ex rel. Stephan v. Brotherhood Bank & Trust Co.*, 649 P.2d

---

[3] Contrary to the State's contentions, Opp. 3-4 & n.10, the complaint identifies *no* specific statement from *any* Manufacturer that price increases were due to research and development costs.

419, 423 (Kan. Ct. App. 1982)). But *Brotherhood Bank* addressed a challenge to the applicable statute of limitations; it made no mention of Rule 9(b). *Brotherhood Bank*, 649 P.2d at 423. What is more, in relying on *state* law to interpret the scope of *federal* rules, the court in *Affiliate Strategies* ran afoul of well-established precedent holding that "the determination of the scope of a rule of civil procedure is a federal question." *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 931-32 (D. Kan. 2007) (cleaned up) (applying Rule 9(b) to KCPA claims).[4] The Court should reject the opposition's invitation to repeat that error.

### C. The Opposition Identifies No Actionable Omission

The opposition tries, and fails, to restyle its KCPA claim under the guise of an omissions theory. Opp. 14-15. As the opposition concedes, a KCPA omissions claim requires the State to plead: (1) that Manufacturers had a duty to disclose; and (2) that any alleged omission was willful. *Id.* But the opposition confirms that no such duty exists here and that no such willfulness was present.

As Manufacturers explained, and as the State concedes, a duty arises only if Manufacturers knew that (a) consumers entered into a transaction under a mistake about a material fact, and (b) consumers would reasonably expect the disclosure of that material fact based on the relationship between the consumers and the supplier (or other objective circumstances). Br. 12; Opp. 14-15. The complaint makes clear that no such duty exists because Manufacturers have *no* relationship with the State or any Kansas consumers: they are several

---

[4] Whatever the import of the KCPA's grant of broad investigative authority to the attorney general, the federal rules of civil procedure control in federal court. *See Gallivan v. United States*, 943 F.3d 291, 294-95 (6th Cir. 2019) ("[A] Federal Rule (if valid) displaces inconsistent state law. Why? Because the Supremacy Clause says as much."); *Vess v. Ciba-Geigy Corp*, 317 F.3d 1097, 1102 (9th Cir. 2003) ("[I]f a Federal Rule of Civil Procedure is valid under the Constitution and the Enabling Act, it applies according to its terms in all civil cases in federal district court.").

steps removed from any consumer transaction and only deal with PBMs, wholesalers, and pharmacies. Br. 12. The opposition does not dispute this, instead implying that a duty can be inferred from the fact that people with diabetes must purchase insulin and do not know that its price is purportedly "inflated." Opp. 15. But a disparity of knowledge, by itself, is not an "objective circumstance[]" that gives rise to a duty to disclose. *Meschke v. OrthAlliance, Inc.*, 2002 WL 1398635, at *1 (D. Kan. June 24, 2002). A "duty arising from special knowledge" is "explicitly connected . . . with the *relationship* between the parties." *Id.* at *2. Where, as here, there is no relationship, there is no duty as a matter of law.

The opposition cites no authority for its overbroad understanding of the rule, which would extend a duty to disclose to *any* supplier of pharmaceuticals, utilities, or other necessities, regardless of the connection, or lack thereof, between the supplier and the end consumer. That is not the law. Indeed, the lone case the opposition cites in support of its argument, *In re Motor Fuel Temperature Sales Practices Litig.*, premised its finding of a duty to disclose on a direct relationship: defendants sold fuel *directly* to plaintiffs. 867 F. Supp. 2d 1124, 1140 (D. Kan. 2012). The State pleads no such relationship between Manufacturers and the State or its citizens.

What is more, the opposition also confirms that none of the purported omissions could possibly be willful. As the opposition concedes, an omission claim under the KCPA requires the State to plead that in withholding material information, Manufacturers had an intent to harm the consumer. Opp. 15. The complaint includes no such allegations. Br. 12-13. And though it simply claims, without providing any support, that "there is no dispute concerning the willfulness of the Manufacturers' conduct," Opp. 15, that is irreconcilable with the fact that Manufacturers have for many years *publicly* disclosed the facts the State alleges were not disclosed to the consumer—namely, that Manufacturers' list prices do not include rebates to the

9

PBMs. Br. 5-6. The opposition's reliance on cases like *Unruh v. Purina Mills, LLC*, 221 P.3d 1130 (Kan. 2009), where the court premised its finding of willfulness on the fact that the defendant gave no warning to consumers that it had changed a feed formula and failed to take corrective action, is therefore misplaced. Because it is unable to show either a duty to disclose or willfulness, the State fails to plead a KCPA omissions claim.

### D. The Opposition Fails to Plead Unconscionability

The State's KCPA unconscionability claim fares no better. Whether an act is unconscionable under the KCPA is a question of law,[5] which the State concedes requires it to plead (1) unconscionability, (2) unequal bargaining power, *and* (3) deceptive conduct. Opp. 6, 17. The complaint fails to adequately plead all three. Br. 13-14.

As with its deception argument, the State's unconscionability claim is premised on allegations that prices were so "inflated" that they were "excessive." Opp. 18. But high prices alone are not unconscionable under Kansas law. *In re Graphics Processing United Antitrust Litig.*, 527 F. Supp. 2d 1011, 1029-30 (N.D. Cal. 2007); *see also Schoenbaum*, 517 F. Supp. 2d at 1153 (rejecting unconscionability claim based on alleged failure to disclose supracompetitive prices). Although the State claims that "Kansas courts have found that allegations of excessive or artificially-inflated prices state unconscionability claims," Opp. 18, none of its cases support that claim. Some address unrelated legal issues. *See, e.g.*, *State ex rel. Kline v. Transmasters*

---

[5] The State incorrectly suggests that the Court cannot decide whether a specific act or practice is unconscionable on a motion to dismiss because it must review written documents and witness testimony. But courts routinely dispose of KCPA unconscionability claims as a matter of law at the pleading stage. *See, e.g.*, *Maxwell v. St. Francis Health Center*, 2017 WL 4037732, at *5 (D. Kan. Sept. 13, 2017) (granting motion to dismiss because "misconduct alleged by plaintiff does not sink to the level of an unconscionable act or practice"); *Croyder v. Hetley*, 2016 WL 2985452, at *3 (D. Kan. July 11, 2017) (granting motion to dismiss because the alleged acts were not "unconscionable acts or practices within the meaning of the KCPA").

*Towing*, 168 P.3d 60, 66 (Kan. Ct. App. 2007) (addressing federal preemption argument); *Luttrell v. Brannon*, 2018 WL 3032993, at *12, *14 (D. Kan. Jun. 19, 2018) (addressing issues of immunity and causation regarding alleged medical malpractice). In others, the plaintiff's allegations bore no resemblance to the State's. In *Via Christi Regional Medical Center, Inc. v. Reed*, for example, the court allowed a KCPA claim challenging "overcharges for items and services [plaintiff] *did not receive* and duplicate billing." *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 858 (Kan. 2013) (emphasis added); *see also Louisburg Bldg. & Dev. Co. v. Albright*, 252 P.3d 597, 624-25 (Kan. Ct. App. 2011) (while "aware of [plaintiffs'] budget," contractor "failed to inform [them] of "substantial cost overruns"); *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 609 (D. Kan. 2014) ("Plaintiff argues that defendants' conduct was unconscionable because it sold a defective product."). None of these cases hold that complaints about prices, standing alone, state a KCPA unconscionability claim.

The opposition argues for the first time that four additional circumstances, none of which are alleged in the complaint, show unconscionability. First, the opposition asserts that Manufacturers took "advantage of the consumer's physical infirmity." Opp. 16. That requires an allegation that the consumer is "incapable of comprehending contractual terms due to some language barrier, mental incapacity, or the prevalence of legal jargon." *Louisburg Bldg.*, 252 P.3d at 617. The complaint includes no such allegations. Second, the opposition claims there is a "gross disparity" between prices for commercially insured and uninsured Kansans and prices for federally insured Kansans, Canadians, and Europeans. Opp. 16. But none of those comparators are "similar consumers," as statutorily required. Kan. Stat. Ann. § 50-627(b)(2).[6]

---

[6] The State's brief does not claim that Canadians, Europeans, or federally insured Kansans are similar consumers. Opp. 16 n.19. It instead argues that because it cannot identify similar consumers, it should not have to. It cites no authority for that claim. *Motor Fuel* never
(….continued)

Third, the opposition argues that consumers do not receive a material benefit "for that amount of the purchase price which exceeds the actual, non-inflated price." Opp. 16-17. But that misconstrues the statutory language, which covers circumstances where "the consumer was unable to receive a material benefit *from the subject of the transaction*." Kan. Stat. Ann. § 50-627(b)(3) (emphasis added). There is no dispute that consumers receive a material benefit from insulin, which is the subject of the transaction. *Finally*, the opposition asserts that the Court can consider the disparity between Manufacturers' costs and their prices. Opp. 17. But this argument is foreclosed by the complaint itself, which acknowledges that Manufacturers have "maintain[ed] their net prices" over the past 15 years, with increasing prices necessitated to offset increased PBM rebate demands. Compl. ¶¶ 317, 323 n.10; *id.* ¶ 26.

As to deceptive conduct—again, a required element of any unconscionability claim—Manufacturers explained in the opening brief that the complaint is devoid of *any* allegation of *any* particular deceptive act by *any* Manufacturer, let alone with the specificity required by Rule 9(b). Br. 13. For the reasons discussed above, the State's arguments in opposition all fail. That alone dooms the State's KCPA unconscionability claim.

The opposition also confirms that the State has not alleged, and cannot allege, that Manufacturers exerted unequal bargaining power. Br. 14. The opposition cannot cure the fundamental defect with the State's theory of unequal bargaining: namely, the complaint never alleges that the State or its citizens engaged in *any* negotiations with Manufacturers. *Id.* Thus, the fact that Manufacturers purportedly control insulin *production*, Opp. 17, says nothing about their relative bargaining power over the point-of-sale *prices* charged to the State or its citizens by

---

addressed this factor. 867 F. Supp. at 1124. And *Via Christi* insisted that plaintiffs use appropriate comparators and criticized the plaintiff for citing "completely different" transactions for their "shock value." 314 P.3d at 867-68.

third parties.  Indeed, the complaint makes clear that Manufacturers do not sell diabetes medications directly to, and are not involved in negotiations related to insulin pricing with, the State or its citizens.  Br. 14.  At bottom, there is no alleged bargain with the consumer—or even a negotiation—in which Manufacturers *could have* exerted unequal power.

In the absence of any allegations of a bargain (or a negotiation) between any Manufacturer and consumers, the State's cases—which all turn on such an underlying bargain or negotiation between plaintiff and defendant—are inapposite.[7]  *E.g.*, *Dodson v. U-Needa Self Storage, LLC*, 96 P.3d 667, 672-73 (Kan. Ct. App. 2004) (unequal bargaining power when consumer told defendant she had never signed a contract and defendant "told her how to fill out" a "standard boiler plate contract").  None can salvage the State's claim.

## II.  The State Has Failed to Plead Unjust Enrichment

As the opening brief explained, under Kansas law, the State must identify a benefit conferred on *Manufacturers*, rather than on the other entities in the pharmaceutical distribution chain (e.g., pharmacies) that actually receive payments from Kansas consumers.  Br. 16-17; *see Spires v. Hosp. Corp. of Am.*, 289 F. App'x 269, 273 (10th Cir. 2008).  The opposition simply ignores this requirement.  Opp. 24-25.[8]

---

[7] To the extent that the State relies on *Luttrell v. Brannon*, 2018 WL 3032993, at *14 (D. Kan. Jun. 19, 2018) to suggest that unfair bargaining power is not needed to plead a KCPA unconscionability claim for excessive pricing under Kan. Stat. Ann. § 50-627(b)(2), that runs squarely contrary to the State's own case law. *See Via Christi*, 314 P.3d at 867-68 (holding that Kan. Stat. Ann. § 50-627(b)(2) requires pleading unequal bargaining power).

[8] The opposition's reference to the lack of a privity requirement for unjust enrichment claims in Kansas is a red herring.  Regardless of whether privity is required, the State does not, and cannot, dispute that it must plead that consumers conferred a benefit on Manufacturers to state an unjust enrichment claim.  Opp. 24-25.  *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, which the opposition cites, is not to the contrary: although the plaintiff subcontractor was not in contractual privity with the defendant, it nevertheless conferred a
(….continued)

Backtracking on the allegations in the complaint, the opposition argues that Manufacturers profited "immensely" from rebates.  *See* Opp. 25.  But the complaint refutes this position.  *See* Compl. ¶¶ 23, 350, 351; *see also id.* ¶ 317 ("[T]he Manufacturers have artificially inflated their list prices for the at-issue drugs exponentially, *while largely maintaining their net prices* by paying larger and larger amounts of Manufacturer Payments back to the PBMs." (emphasis added)).  A company cannot merely "maintain" its net prices, due to the need to pay larger and larger rebates, while at the same time allegedly reaping "immense" profits.  Nor does the allegation make sense when the alleged misconduct (increased rebates) is the source of the lower net prices.

Finally, because the State's unjust enrichment claim is predicated on the same unconscionable conduct that underlies its deficient KCPA claim, the unjust enrichment claim should also be dismissed.  Br. 18.

## III.    The State Has Failed to Plead a Civil Conspiracy

The State's civil conspiracy claim also fails.  As Manufacturers explained, a claim for civil conspiracy requires a showing of an agreement or "meeting of the minds" between the alleged conspirators.  Br. 19.  Conceding that it does not allege any direct evidence of the required agreement, the opposition instead points to several "plus factors" that it claims support an inference of an agreement.  Opp. 26-27.  But these "plus factors," which include "a highly concentrated market" and "evidence of an unwillingness . . . to compete on price," are drawn almost exclusively from cases addressing *antitrust* rather than *civil* conspiracies.[9]  But as the

_____

benefit on defendant by removing hazardous waste from defendant's property.  910 P.2d 839, 847 (Kan. 1996).

[9] The overwhelming majority of the cases cited in the section of the opposition devoted to the State's civil conspiracy claim are antitrust conspiracy cases, including six of the seven out-

(….continued)

State explains, its "complaint does not allege price-fixing . . . nor does it assert an antitrust cause of action."  Opp. 18.  Having disclaimed any antitrust cause of action, the opposition cannot invoke irrelevant antitrust concepts to save its civil conspiracy claim.

Even if these antitrust concepts were applicable here (and they are not), the complaint's allegations of trade show meetings and parallel pricing do not move the needle from possibility to probability under *Twombly* and the other antitrust cases cited by the State.  *See, e.g.*, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012) ("A complaint alleging merely parallel conduct is not sustainable.  'A statement of parallel conduct, even conduct consciously undertaken, *needs some setting suggesting the agreement necessary* . . . but without some further factual enhancement it stops short of the line between possibility and plausibility . . . .'" (emphasis in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); Opp. 26.  As explained in the opening brief, the complaint lacks the necessary "further factual enhancement"; mere allegations of parallel conduct in attending trade shows and similarities in pricing are not enough to plausibly allege a conspiracy.  Br. 18-19.  This is fatal to the State's civil conspiracy claim, and the opposition's reliance on other insulin cases involving alleged violations of *other* states' laws cannot serve to fill the gaps in the complaint here.

The State's civil conspiracy claim thus fails.

## CONCLUSION

For the foregoing reasons, Manufacturers respectfully request that the Court dismiss all claims against them with prejudice.

---

of-circuit cases that the State packs into a footnote—which discuss plus factors in the antitrust context.  Opp. 26-29, 27 n.24.

Respectfully Submitted,

FOULSTON SIEFKIN LLP


*/s/ Gary L. Ayers*

Gary L. Ayers, #10345
Clayton J. Kaiser, #24066
gayers@foulston.com
ckaiser@foulston.com
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
Phone: (316) 267-6371
Fax: (316) 267-6345

James P. Rouhandeh (*pro hac vice*)
rouhandeh@davispolk.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Phone: (212) 450-4000
Fax: (212) 701-5800

Neal A. Potischman (*pro hac vice*)
Andrew D. Yaphe (*pro hac vice*)
neal.potischman@davispolk.com
andrew.yaphe@davispolk.com
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Phone: (650) 752-2000
Fax: (650) 752-2111

*Attorneys for Defendant Novo Nordisk Inc.*

WALLACE SAUNDERS

/s/ Bryan E. Mouber

Bryan E. Mouber, # 19710
bmouber@wallacesaunders.com
10111 West 87th Street
Overland Park, KS 66212
Phone: (913) 752-5511

James F. Hurst, P.C. (*pro hac vice*)
Andrew A. Kassof, P.C. (*pro hac vice*)
Diana M. Watral, P.C. (*pro hac vice*)
Ryan J. Moorman (*pro hac vice*)
Jason A. Feld (*pro hac vice*)
james.hurst@kirkland.com
akassof@kirkland.com
diana.watral@kirkland.com
ryan.moorman@kirkland.com
jason.feld@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Phone: (312) 862-2000

*Attorneys for Defendant Eli Lilly and Company*

SHOOK, HARDY & BACON

/s/ Robert J. McCully
Robert J. McCully, #12433
rmccully@shb.com
2555 Grand Boulevard
Kansas City, Missouri 64108
Phone: (816) 474-6550
Fax: (816) 421-5547

Shirlethia V. Franklin (*pro hac vice*)
Theresa C. Martin (*pro hac vice*)
William D. Coglianese (*pro hac vice*)
sfranklin@jonesday.com
tcoughlin@jonesday.com
wcoglianese@jonesday.com
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700

*Attorneys for Defendant Sanofi-Aventis U.S.
LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2023, the foregoing was filed via the Court's Clerk of the

Court by using the CM/ECF System, which will send a notice of electronic filing to all attorneys

of record.

/s/ *Gary L. Ayers*
Gary L. Ayers

Attorneys for Defendant Novo Nordisk Inc.
On Behalf of Manufacturer Defendants