# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## TOPEKA DIVISION

THE STATE OF KANSAS, EX REL., DEREK
SCHMIDT, ATTORNEY GENERAL

*Plaintiff,*

v.

ELI LILLY AND COMPANY, *et al.*,

*Defendants.*

Civil Action No. 5:23-cv-4002-EFM-RES

**ORAL ARGUMENT
REQUESTED**

## PBM DEFENDANTS' REPLY SUPPORTING THEIR
## RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT
## <u>FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>

# TABLE OF CONTENTS

NATURE OF THE MATTER BEFORE THE COURT ............................................................... 1

ARGUMENT ...................................................................................................................... 1

I.    THE STATE FAILS TO PLEAD A CLAIM UNDER THE KCPA. ................................. 1

    A.    PBM Defendants are not "suppliers" engaged in a "consumer transaction." ....... 1

    B.    Allegations lumping defendants together do not satisfy Rule 9(b). .................... 4

        1.    Rule 9(b) applies to each of the State's claims. ......................................... 4

        2.    The State's allegations lack the particularity that Rule 9(b) requires. ........ 6

    C.    The State fails to state a claim for deception under the KCPA. .......................... 7

        1.    The Complaint fails to identify material misrepresentations or omissions. 7

        2.    The State fails to allege any duty to disclose. ............................................ 8

    D.    The State fails to plead a KCPA unconscionability claim. ................................. 9

II.    THE STATE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ................ 11

    A.    The express contracts foreclose the State's claim for unjust enrichment. .......... 11

    B.    The State cannot pursue an unjust enrichment claim as *parens patriae*. ........... 13

III.    THE STATE HAS NOT PLAUSIBLY ALLEGED A CIVIL CONSPIRACY .............. 13

IV.    THE COURT SHOULD DISMISS THE PBMS' CORPORATE PARENTS AND AFFILIATE ENTITIES. ................................................................................................. 15

CONCLUSION ................................................................................................................. 15

**FEDERAL CASES**

*Alpine Bank v. Hubbell*, 555 F.3d 1097 (10th Cir. 2009) .................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................15

*Buridi v. Idbeis*, 2016 WL 6905899 (D. Kan. Nov. 22, 2016) ......................................14

*Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515 (D. Kan. 1995)......................5

*Freedom Transp., Inc. v. Navistar Int'l Corp.*, 2020 WL 430213 (D. Kan. Jan. 28, 2020) ...........7

*FTC v. Affiliate Strategies, Inc.*, 2010 WL 11470099 (D. Kan. June 4, 2010)................5

*FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192 (10th Cir. 2005)..................................5

*Garcia v. Wilson*, 731 F.2d 640 (10th Cir. 1984) .........................................................13

*Gilmore v. Beveridge*, 2022 WL 17082681 (D. Kan. Nov. 18, 2022)..............................8

*Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233 (D. Kan. 2007) ...................................6

*Holman v. Fifth Third Bank, N.A.*, 2021 WL 5578549 (D. Kan. Nov. 30, 2021)...........5

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009) ...............10

*In re Graphic Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007)...........10

*In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1079 (S.D. Cal. 2018) .............13

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 300 F. Supp. 2d 1107 (D. Kan. 2003) ......................................................................................................................14

*Kastner v. Intrust Bank*, 2011 WL 2149432 (D. Kan. June 1, 2011) ...................1, 2, 3, 4

*Lynd v. Brickie*, 1990 WL 203158 (D. Kan. Nov. 21, 1990)..................................3, 4, 11

*Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co.*, 130 F.3d 950 (10th Cir.1997)............11

*Meyer v. Christie*, 634 F.3d 1152 (10th Cir. 2011).......................................................11

*Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600 (D. Kan. 2014)................9

*Ormsby v. Imhoff & Assocs., P.C.*, 2014 WL 4248264 (D. Kan. Aug. 27, 2014) ...........7

*Pinkney v. TBC Corp.*, 2020 WL 1528544 (D. Kan. Mar. 31, 2020) ..........................4, 5

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115 (2016) .................................................4

*Roberts v. Shawnee Mission Ford*, 2003 WL 22143727 (D. Kan. Aug. 20, 2003) ........................2

*Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464 (10th Cir. 1993) ...........................................13

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125 (E.D. Mo. 2007)............10

*SMD Invs. Ltd. v. Raytheon Aircraft Co.*, 2006 WL 580968 (D. Kan. Mar. 8, 2006) ..................10

*Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795 (10th Cir. 2011) ...........................................13

*Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907 (D. Kan. 2007).....................................6, 9

*Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322 (D. Kan. 1996) .....................................................3

*Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154 (D. Kan. 2017)...........................................6

*Wichita Fed. Sav. & Loan Ass'n v. Landmark Grp.*, 657 F. Supp. 1182 (D. Kan. 1987)...............6

*Wright v. Enhanced Recovery Co., LLC*, 227 F. Supp. 3d 1207 (D. Kan. 2016) .......................1, 3

## STATE CASES

*Aeroflex Wichita, Inc. v. Filardo*, 275 P.3d 869 (Kan. 2012) ......................................................14

*Baldwin v. Priem's Pride Motel, Inc.*, 580 P.2d 1326 (Kan. 1978)................................................7

*Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304 (Kan. 1988) ...........................................10

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839 (Kan. 1996).....................12

*Remco Enters., Inc. v. Houston*, 677 P.2d 567 (Kan. Ct. App. 1984)...........................................11

*State ex rel. Mays v. Ridenhour*, 811 P.2d 1220 (Kan. 1991).......................................................4

*State ex rel. Stephan v. Brotherhood Bank & Tr. Co.*, 649 P.2d 419 (Kan. Ct. App. 1982) ..........5

*Stoldt v. City of Toronto*, 678 P.2d 153 (Kan. 1984) .............................................................13, 14

*Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 298 Kan. 503 (2013)...................................................9

## OTHER AUTHORITIES

42 U.S.C. § 1395w-3a(c)(6)(B) .....................................................................................................8

Kan. Stat. Ann. § 50-132 ...............................................................................................................4

Kan. Stat. Ann. § 50-161 ...............................................................................................................4

Kan. Stat. Ann. § 50-624 ...................................................................................1, 2, 3, 4

Kan. Stat. Ann. § 50-626 ...........................................................................................4

Kan. Stat. Ann. § 50-627 .......................................................................................4, 11

Kan. Stat. Ann. § 50-632 ...........................................................................................13

Fed. R. Civ. P. 9............................................................................................4, 5, 6, 9

## NATURE OF THE MATTER BEFORE THE COURT

The State of Kansas's Complaint is a transparent effort to transform industry-standard Pharmacy Benefit Manager practices into consumer-protection claims, even though PBMs do not contract with consumers. These claims rely on an imagined conspiracy the State calls the "Insulin Pricing Scheme" and subjective statements about the benefits of PBMs' services the State calls "misrepresentations." The State's claims fail as a matter of law, and its Opposition only confirms that dismissal is appropriate. Among other fatal flaws, the State concedes that PBMs' contracts with manufacturers and their health-plan clients are not "consumer transactions." Opp'n 7. The State does not even try to explain why the supposed misrepresentations it identifies are actionable statements of fact as opposed to opinion. And the State cannot avoid the reality that its claims of an "Insulin Pricing Scheme" sound fundamentally in antitrust, not in consumer protection. The Court should dismiss the State's Complaint with prejudice.

## ARGUMENT

I. **THE STATE FAILS TO PLEAD A CLAIM UNDER THE KCPA.**

   A. **PBM Defendants are not "suppliers" engaged in a "consumer transaction."**

The State concedes that the PBMs' health-plan clients are not "consumers," and that the PBMs' contracts with health plans and manufacturers are not "consumer transactions." *See* Opp'n 7. Those concessions doom the State's claim. This Court has repeatedly recognized that the KCPA's "protection is limited to parties who actually contract with suppliers for goods or services." *Wright v. Enhanced Recovery Co., LLC*, 227 F. Supp. 3d 1207, 1211 (D. Kan. 2016) (Melgren, J.); *see also Kastner v. Intrust Bank*, 2011 WL 2149432, at *3-4 (D. Kan. June 1, 2011) (Melgren, J.), *aff'd*, 569 F. App'x 593 (10th Cir. 2014). An entity is a "supplier" under the KCPA only if it "solicits, engages in or enforces consumer transactions." Kan. Stat. Ann. § 50-624(l).

Under that definition, PBMs are not suppliers. PBMs negotiate with manufacturer counterparties to obtain rebates (discounts) on pharmaceutical drugs. Compl. ¶¶ 276, 356-57, 409-10. Those rebates flow back to the PBMs' health-plan clients in accordance with the terms of each client's individually negotiated contract. *Id.* ¶¶ 268, 276. Consumers do not interact with or "exchange[] anything of value" with PBMs. *Kastner*, 569 F. App'x at 599. And, as the State concedes, neither health plans nor manufacturers are "consumers." PBMs, therefore, engage in no "consumer transactions" and could not be "suppliers" under the KCPA.

The State offers six scattershot responses; none saves its KCPA claim. *First*, the State asserts (at 8-9) that pharmacies affiliated with the PBMs engage in "consumer transactions" by selling insulin to diabetics. But pharmacies are not PBMs. The Complaint alleges that *the PBMs*, not any pharmacy or group of pharmacies, engaged in an "insulin pricing scheme." Nor would any such allegations against pharmacies make sense: The challenged conduct involves negotiating rebates and developing formularies, elements of PBMs'—not pharmacies'—business. The fact that pharmacies may engage in consumer transactions with insulin users does not make PBMs "suppliers" under the KCPA. *Kastner*, 569 F. App'x at 599.

*Second*, the State (at 10) claims that the PBMs are "suppliers" because they allegedly profit from insulin sales. But earning a profit does not transform a PBM into a supplier. The State's argument ignores the statutory definition of "supplier," which requires an entity to "solicit[], engage[] in or enforce[] consumer transactions." Kan. Stat. Ann. § 50-624(l). Suggesting that profit alone makes an entity a "supplier" is inconsistent with the settled rule that wholesalers selling goods for resale are categorically excluded from the KCPA, even though they can reap the benefits of ultimate consumer sales. *See Roberts v. Shawnee Mission Ford*, 2003 WL 22143727, at *2 (D. Kan. Aug. 20, 2003).

*Third*, the State (at 9) argues that PBMs are "suppliers" because they "set the terms of reimbursement" for insulin and "coordinate with Manufacturers to set the price" of the at-issue drugs. But the PBMs do not engage in or solicit insulin sales, the determinative factors in whether an entity is a "supplier" under the KCPA. *Wright* 227 F. Supp. 3d at 1207; *Kastner*, 2011 WL 2149432, at *4. A close connection to a supplier does not make one a "supplier" under the KCPA. Consider the wholesaler in *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1333 (D. Kan. 1996), who sold gasoline through its franchisees, stored its gasoline in franchisees' storage tanks, and did not transfer title to the gasoline to the franchisees until it was pumped and sold. The wholesaler did not qualify as a "supplier" even though it owned the gas until the moment of sale. *Id.* at 1364. Here, the PBMs never own any good sold to any consumer; they engage in purely financial transactions.

*Fourth*, the State (at 9-10) argues that the PBMs are suppliers because they engage in "direct outreach" to "convince Kansas diabetics that [PBMs] are lowering the price of the at-issue drugs." But, again, the PBMs do not themselves sell or offer products or services to consumers. This Court already has held that direct outreach to consumers is irrelevant if the aggrieved individual is not a "consumer *with respect to his dealings with [the defendant]*." *Wright*, 227 F. Supp. 3d at 1211.[1]

*Fifth*, the State argues that the KCPA does not require "privity" or "direct contact between suppliers and consumers." Opp'n 8, 10-11 (quoting *Lynd v. Brickie*, 1990 WL 203158 (D. Kan. Nov. 21, 1990)). But the PBMs never have argued that the KCPA requires privity. Rather, they argue that an entity is outside of the KCPA's reach if it is not a supplier. Kan. Stat. Ann. § 50-

---

[1] That the plaintiff was not a "consumer" during his "encounters" with the defendant was dispositive in that case. *Wright*, 227 F. Supp. 3d at 1211. The State's characterization (at 10 n.12) of this discussion as "dicta" is wrong.

624(l).  In the State's lone case, *Lynd*, the defendant did not dispute that a "consumer transaction arose from the parties' agreement" at issue but insisted formal privity of contract was required for KCPA liability.  *Lynd*, 1990 WL 203158, at *2.  The court rejected that proposition.  *Id.*  Here, the State does not allege that PBMs offer services to consumers at all.  The State instead concedes that "PBMs do not contract with Kansas diabetics on an individual drug basis."  Compl. ¶ 480.

*Finally*, the State (at 10) falls back on conspiracy liability.  That argument fails like the rest.  The KCPA unambiguously requires that the State prove that the PBMs are "supplier[s]."  *See* Kan. Stat. Ann. §§ 50-626, 627.  Nothing in the KCPA's text permits an interpretation of "supplier" that would sweep in alleged conspirators.  On the contrary, the legislature limited the KCPA's scope to those who "solicit[]," "engage[] in," or "enforce[]" consumer transactions.  The legislature knows how to provide for conspirator liability expressly, as it has done in its antitrust statutes.  *See, e.g.*, Kan. Stat. Ann. § 50-132 (prohibition on "[c]onspiring to monopolize); § 50-161 (damages available for anyone damaged by "conspiracy or combination which is declared unlawful").  The State's reading of the KCPA would effectively eliminate the "supplier" limitation. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 127 (2016) ("Congress does not, one might say, hide elephants in mouseholes.").  And it is inconsistent with the settled principle that the KCPA does not extend to entities that do not "exchange[] anything of value" with the aggrieved party.  *Kastner*, 569 F. App'x at 599; *see* PBM's Br. at 5-6. [2]

**B.     Allegations lumping defendants together do not satisfy Rule 9(b).**

**1.     Rule 9(b) applies to each of the State's claims.**

The State does not dispute that its claims for deceptive trade practices "sound in fraud."  For that reason alone, Rule 9(b) applies.  *E.g.*, *Pinkney v. TBC Corp.*, 2020 WL 1528544, at *6

---

[2] The text of the KCPA forecloses any attempt to import the reasoning of *State ex rel. Mays v. Ridenhour*, 811 P.2d 1220 (Kan. 1991) into the KCPA, and the State identifies no authority for doing so.

(D. Kan. Mar. 31, 2020). Indeed, "[n]umerous decisions of this Court have held that allegations of deceptive trade practices under the KCPA are required to meet the heightened pleading standard for fraud under Rule 9(b)." *Holman v. Fifth Third* Bank, N.A., 2021 WL 5578549, at *5 & n.21 (D. Kan. Nov. 30, 2021) (collecting cases).

The State nevertheless argues that the Rule 9(b) standard does not apply because it sued "to protect the public interest." Opp'n 5-6. But the State is not acting solely in the public interest. It seeks *damages*, restitution, and civil penalties. Compl. at 114 ¶¶ C–D (emphasis added). The Tenth Circuit has excused the FTC (but not the Attorney General) from complying with Rule 9(b) when it brings a "government action brought to *deter* deceptive acts and practices aimed at the public." *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005) (emphasis added); *see also id.* at 1203 (describing the "prophylactic purpose" of Section 5 of the FTC Act). Claims for damages based on deceptive practices under the KCPA, however, "sound largely in fraud" and are subject to Rule 9(b). *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995).

The State's cited authority does not discuss Rule 9(b) at all. *State ex rel. Stephan v. Brotherhood Bank & Tr. Co.*, 649 P.2d 419 (Kan. Ct. App. 1982). The only issue in that case was whether the State was acting in its proprietary capacity for statute of limitations purposes. *Id.* at 423-24. *FTC v. Affiliate Strategies, Inc.*, 2010 WL 11470099, at *9-10 (D. Kan. June 4, 2010)— an unpublished case from more than a decade ago—incorrectly ignored Rule 9(b) based on the State's asserted policy goals. The State is not excused from satisfying Rule 9(b)'s requirement when pursuing KCPA claims, like this one, that sound in fraud. *See, e.g.*, *Holman*, 2021 WL 5578549, at *5 & n.21 (collecting cases).

### 2. The State's allegations lack the particularity that Rule 9(b) requires.

To satisfy Rule 9(b), the State must allege "the time, place and content of the alleged wrongful conduct, as well as the identities of the wrongdoers," Opp'n 6 (citing *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007)), "and"—the State cuts off before reaching the quotation's conclusion—"the harm caused by plaintiffs' reliance on any false representation." *Gonzalez*, 489 F. Supp. 2d at 1247. "When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant." *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 933 (D. Kan. 2007).

Here, any references to CVS Caremark, ESI, and OptumRx are dwarfed by the references to the PBMs collectively, making clear the State's failure to satisfy Rule 9(b). That failure to identify "who, within … broad classes of [defendants], made misrepresentations" warrants dismissal of its claims. *Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154, 1176 (D. Kan. 2017), *aff'd sub nom.*, *Farmer v. Kan. State Univ.*, 918 F.3d 1094 (10th Cir. 2019). Even when the State purports to identify specific PBM conduct, it improperly lumps together allegations against "Express Scripts" (six entities, plus predecessors and successors), "CVS Caremark" (five entities, plus predecessors and successors), and "OptumRx." Nowhere does the State allege with the particularity required by Rule(b) which entity said what, when, or where. The State's allegations fail under Rule 9(b) because they do not "inform each defendant of the specific fraudulent acts justifying his inclusion in the count." *Wichita Fed. Sav. & Loan Ass'n v. Landmark Grp.*, 657 F. Supp. 1182, 1191 (D. Kan. 1987).

## C. The State fails to state a claim for deception under the KCPA.

### 1. The Complaint fails to identify material misrepresentations or omissions.

The State asserts that the PBMs engaged in deceptive conduct by misrepresenting "that their formularies have the characteristic and benefit of lowering the price of the at-issue drugs and promoting diabetic health" and "that the Manufacturer Payments they receive reduce the price of the at-issue drugs for diabetics and payors[.]"  Opp'n 12-13.  But as explained in the PBMs' opening brief, the State fails to plead any material statement by a PBM capable of being proven false.  *See* Mot. 8-14.  Subjective, aspirational, and non-quantifiable statements are not actionable under the KCPA.  *See Ormsby v. Imhoff & Assocs., P.C.*, 2014 WL 4248264, at *10 (D. Kan. Aug. 27, 2014); *Baldwin v. Priem's Pride Motel, Inc.*, 580 P.2d 1326, 1329 (Kan. 1978).

The State asserts that the Complaint contains "facts that are capable of objective verification."  Opp'n 18.  But the State's response is *ipse dixit*.  The State does not explain how the alleged statements the PBM Defendants identified are quantifiable or capable of objective measurement.  Mot. 9-13.  Nor could the State plausibly do so.  Representations that (1) PBMs are aligned with their payor clients (*id.* at 9-10), (2) PBMs work to lower prices for at-issue drugs (*id.* at 10-11), and (3) PBMs create formularies and collect rebates for the benefit of diabetics and payors (*id.* at 11-12) are textbook puffery, not objective statements of fact that can give rise to a claim of fraud.  *See* Compl. ¶¶ 409-10; *Freedom Transp., Inc. v. Navistar Int'l Corp.*, 2020 WL 430213, at *9 (D. Kan. Jan. 28, 2020).

Instead of addressing the PBMs' argument on its merits, the State cites two non-binding decisions from other jurisdictions addressing similar arguments.  *See* Opp'n 18-19.  Those decisions contradict Tenth Circuit authority.  Representing that a party is using its negotiating power in the "best interests," Opp'n 13, of its client is no different from representing that a

company will "be on [a client's]" side. *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009).

The State's allegations that the PBMs failed to disclose knowledge of a "false list price" (Compl. ¶¶ 327, 408) fail because the State cannot allege that the list prices were false.[3] The State claims that the listed Wholesale Acquisition Cost (WAC) was false because it did not disclose discounts associated with rebates. But WAC is defined by federal statute as "the manufacturer's list price for the drug or biological to wholesalers or direct purchasers … *not including prompt pay or other discounts, rebates or reductions in price*." 42 U.S.C. § 1395w-3a(c)(6)(B).

The State misconstrues the PBMs' argument based on Section 1395w-3a(c)(6)(B). Opp'n 20 (citing Opp'n to Manufacturer's Br. at 24-27). The WAC cannot be false because it is a *defined* term calculated pursuant to statute. The State alleges no instance where PBMs published a different number than the WAC that manufacturers set. The PBMs' correct transmission of the manufacturers' stated list price is not false. And any argument that the list price was "false" because it was higher than the State believes it should have been is a matter for the political branches, not the courts.

### 2. The State fails to allege any duty to disclose.

The State's Complaint does not allege the existence of any duty to disclose running from PBMs to consumers. In arguing otherwise, the State omits half of the showing it must make to establish that duty—the existence of a special relationship. *Compare* Opp'n 20 ("Under the KCPA, a supplier has a duty to disclose if the supplier knows that the consumer is entering into a

---

[3] The State improperly purports to incorporate by reference four pages of its opposition to the Manufacturer Defendants' motion to dismiss into five lines of its opposition here. Opp'n at 20. "Regardless of whether this avoids duplicative arguments, it effectively circumvents the Court's page-limit requirements." *Gilmore v. Beveridge*, 2022 WL 17082681, at *3 n.5 (D. Kan. Nov. 18, 2022). The Court should treat this portion of the PBMs' brief as uncontested.

transaction under a mistake about a material fact and the consumer would reasonably expect disclosure of such fact."), *with Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 613 (D. Kan. 2014) (explaining that special relationship must exist for duty to disclose). The State does not and cannot identify any allegations that satisfy the special relationship requirement.

In a footnote, the State attempts (at 21 n.18) to distinguish the numerous federal authorities establishing that there is no duty to disclose price information by claiming that those cases involved "specific proprietary pricing policies." It is not clear what the State means, but, in any event, those cases are directly on point: They turned on the relationship between the plaintiffs and the defendants, not the nature of the information allegedly concealed. *See* PBM Br. at 15 & n.3. And the State's last-ditch attempt (at 21 n.18) to distinguish those cases based on their procedural posture (at the summary judgement stage) is meritless.

### D. The State fails to plead a KCPA unconscionability claim.

The State similarly cannot maintain a claim for unconscionable conduct under the KCPA. While the State argues its unconscionability claim is not subject to Rule 9(b), it affirmatively recognizes that "supplier deception" is an essential element of an unconscionability claim under the KCPA and relies on its arguments and allegations supporting its deceptive practices claim to satisfy that element. Opp'n. 21 (quoting *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 525 (2013)); *id.* at 21 n.19.[4] As discussed above, claims alleging deceptive conduct under the KCPA are subject to Rule 9(b), and the State has failed to meet that standard. *See supra* at I.B.1.

But even if the State's allegations met this threshold, the State's unconscionability claim is a repackaged antitrust lawsuit. "[T]he Supreme Court of Kansas has distinguished between

---

[4] Even assuming some unconscionability claims under the KCPA do not sound in fraud, the State's unconscionability cause of action here rests on allegations that the PBMs "made a misleading statement of opinion" upon which Kansas consumers were "likely to rely." Compl. ¶ 465. This type of unconscionability claim "involves aspects of fraud" subject to Rule 9(b). *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 932 (D. Kan. 2007).

consumer harms redressable [under the KCPA] and pricing harms governed by the Kansas antitrust statute." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584 (M.D. Pa. 2009) (quoting *Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 306-08 (Kan. 1988) (applying KCPA)). Although the State says that it is not alleging a price fixing theory (at 24 & n.23), the Complaint says otherwise. The State alleges that both manufacturers and PBMs dominated their respective markets. *See, e.g.*, Compl. ¶¶ 5-6. And the State alleges that the defendants engaged in an "Insulin Pricing Scheme," that consisted of "lockstep price increases" following "annual conferences." *Id.* ¶¶ 253, 297-98, 304-05. These allegations plainly sound in antitrust. And courts routinely reject attempts to "reformulate … antitrust claims to state a claim under the KCPA." *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1153 (E.D. Mo. 2007) (applying KCPA), *vacated in part on other grounds*, 2007 WL 3331291 (E.D. Mo. 2007); *Abbick*, 757 P.2d at 307; *In re Graphic Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1030 (N.D. Cal. 2007) (applying KCPA). The State's claim fails as an antitrust theory masquerading as a consumer protection claims. *In re Chocolate*, 602 F. Supp. 2d at 584.

The Complaint also fails to allege an unconscionability claim on its own terms. The Complaint does not allege that PBMs exercise any bargaining power (much less unequal bargaining power) *as to consumers*, because PBMs negotiate solely with "sophisticated business entities," including manufacturers, health-plan payors, and pharmacies. *SMD Invs. Ltd. v. Raytheon Aircraft Co.*, 2006 WL 580968, at *8 (D. Kan. Mar. 8, 2006). The State never explains how PBMs can exercise market power over consumers with whom it does not contract and to whom it does not offer any goods or services.

The State again cites *Lynd* (at 23), but that case says nothing about unequal bargaining power and does not involve unconscionability. It stands, instead, for the narrow proposition that

plaintiffs may sometimes establish a KCPA claim without contractual privity if the parties otherwise have a consumer/supplier relationship. *See Lynd*, 1990 WL 203158, at *2.

Finally, the State cannot establish that the price Kansas diabetics paid for insulin "grossly exceeded" the price at which the at-issue drugs were sold in "similar transactions by similar consumers." Kan. Stat. Ann. § 50-627(b)(2). This comparison requires an examination of the "fair market retail price" that was "readily available" to other consumers. *Remco Enters., Inc. v. Houston*, 677 P.2d 567, 572 (Kan. Ct. App. 1984). The State tries to compare the prices Kansans pay for insulin to lower prices paid by foreign consumers. But the State never explains why foreign insulin purchases are comparable to insulin purchases in Kansas.

Similarly, the price that consumers pay for insulin products when the government negotiates directly for drug prices, as it does in TRICARE, cannot compare to the price other Kansans pay as a fair market retail price. *See* Compl. ¶ 420 (alleging diabetics pay less when federal health care programs negotiate directly with manufacturers). The price the government pays for insulin is not a "fair market retail price"; it is the price the federal government agrees to pay. The State does not allege facts showing that the price Kansans pay for insulin grossly exceeds the price paid by similar consumers in comparable transactions.

## II. THE STATE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

### A. The express contracts foreclose the State's claim for unjust enrichment.

It is a "hornbook rule" that "the quasi-contractual remedy of unjust enrichment is not available if there is an enforceable express agreement." *Meyer v. Christie*, 634 F.3d 1152, 1162 (10th Cir. 2011) (citing *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co.*, 130 F.3d 950, 957 (10th Cir.1997)). The State does not dispute that it cannot bring an unjust-enrichment claim where express contracts govern the challenged conduct. Instead, it asserts that there is no contract between the PBMs and Kansas diabetics. Opp'n 24. That argument ignores the myriad of

contracts governing the subject matter of this dispute, including the State's own contracts with certain PBM Defendants that govern the provision of the PBM services that the State puts at issue.

The State affirmatively (and repeatedly) alleges that PBM services provided under PBM contracts are at the heart of the alleged scheme. *See* Compl. ¶¶ 324 ("PBMs include this false and deceptive price … *in their contracts* as a basis to set the rate that payors pay"), 403 (PBMs "require[] that *their contracts* with … payors include such prices as the basis for payment"), 431 ("inclusion of false prices in [PBMs'] *payor contracts*" and "non-transparent Manufacturer Payments" in contracts are part of alleged scheme), 461 (PBMs "require[d] that *their contracts* with … payors include such prices as the basis for payment"). That should end the inquiry.

The State (at 24) argues its unjust-enrichment claim is only in its *parens patriae* capacity, not in its own capacity (a distinction the State did not make in its Complaint). But if that is so, then the State has utterly failed to allege how Kansas citizens "conferred" a "benefit" on the PBMs, or how the PBMs "kn[ew] of" and "retain[ed]" that benefit—two essential elements of an unjust enrichment claim. *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996). Nor has the State alleged facts showing that the PBMs made a "promise implied in law" to Kansans that could warrant an unjust enrichment claim. *Id.* at 846.

To the extent any promises do exist, they are included in express contracts. The State alleges that the PBMs contract with manufacturers (Compl. ¶ 274), payors (*id.* ¶¶ 324, 461), and pharmacies (*id.* ¶¶ 270, 377, 461) regarding the at-issue drugs. Kansas diabetics, in turn, contract with those same payors and pharmacies to access the at-issue drugs. *Id.* ¶¶ 270, 324. The State's insistence that no relevant contracts "exist between the PBMs and diabetics related to the State's claims" (at 24) cannot be reconciled with its allegations showing that every relationship in the so-called "Insulin Pricing Scheme" involves express contracts.

**B.     The State cannot pursue an unjust enrichment claim as *parens patriae*.**

For the State to have standing to pursue *parens patriae* claims, it must "articulate *an interest apart from the interests of particular private parties*." *Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 799 (10th Cir. 2011) (emphasis added) (citation omitted); *accord Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1469 (10th Cir. 1993).   Because the State's unjust enrichment claims seek only to vindicate the private interests of Kansas diabetics, *parens patriae* standing is improper.   *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1079, 1098-1104 (S.D. Cal. 2018); PBM Br. at 21 (collecting cases).   The State fails to cite a single case where a State brought an unjust enrichment claim in its *parens patriae* capacity.

The State (at 25) claims that its unjust-enrichment claim is proper because it can seek "other appropriate relief" under the KCPA.   Opp'n 25 (quoting Kan. Stat. Ann. § 50-632(c)(8)).   But a remedy is not a cause of action.   The State's power to seek a particular remedy under the KCPA says nothing about its ability to bring an entirely different cause of action with different elements and pleading requirements.   *See, e.g.*, *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984) (a cause of action is "distinct from the remedy sought").   The State's authority certainly doesn't say that.   *See Satsky*, 7 F.3d at 1468-70 (analyzing the final-judgment and identity-of-parties elements of res judicata).   Nor does the plain text of the KCPA:  it only authorizes the State to bring an action "to recover damages on behalf of consumers *by reason of violations of this act*."   Kan. Stat. Ann. § 50-632(a)(3) (emphasis added).   The KCPA does not authorize a separate unjust-enrichment claim; that claim should be dismissed.

## III.     THE STATE HAS NOT PLAUSIBLY ALLEGED A CIVIL CONSPIRACY.

Because the State's underlying causes of action fail as a matter of law, *see supra* at I, II, its civil conspiracy claim also should be dismissed.   *See Stoldt v. City of Toronto*, 678 P.2d 153, 161

(Kan. 1984). The State's civil conspiracy claim independently fails because the State does not adequately allege any agreement to violate the KCPA or to obtain an unjust enrichment.

The State alleges no set of facts that demonstrates the existence of an agreement by the defendants to accomplish an unlawful purpose. Dismissal therefore is required. *See Stoldt*, 678 P.2d at 161-62. The State may not "simply offer[] speculation and conjecture that [the defendants'] actions were totally conspiratorial," *Buridi v. Idbeis*, 2016 WL 6905899, at *8 (D. Kan. Nov. 22, 2016). While the State purports to have "provided detailed allegations demonstrating the coordinated efforts between the PBMs and Manufacturers," it merely points to its response to the Manufacturers' motion to dismiss, in which it rehashes allegations of "lockstep price increases," but does not identify what acts, if any, suggest an agreement among the PBMs or between the PBMs and Manufacturers. Opp'n 26 (citing Manufacturer Defs.' Br. at 29-33).[5] Those threadbare allegations provide no basis whatsoever for a conspiracy claim against the PBMs.

In its opposition to the Manufacturer Defendants' brief, the State argues that an agreement may be inferred when the plaintiff alleges "parallel conduct if the parallelism is accompanied by substantial additional evidence, often referred to as the 'plus factors.'" Manufacturers' Opp'n 26 (quoting *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 300 F. Supp. 2d 1107, 1146 (D. Kan. 2003)). That argument too fails. For one thing, the "plus factors" analysis arose in the context of an antitrust claim, which the State expressly disclaims. In any event, the State fails to allege that the PBMs engaged in any parallel conduct such as "parallel pricing" or "parallel business behavior." *In re Universal Serv. Fund*, 300 F. Supp. 2d at 1146-47. The only parallel conduct the State identifies is an alleged practice of "lockstep price increases" of insulin. Manufacturers'

---

[5] As above, the State incorporates by reference multiple pages of its opposition to the Manufacturer Defendants' motion to dismiss into its opposition here. Opp'n at 26.

Opp'n 27.  But those allegations are irrelevant to PBMs, because manufacturers (not PBMs) set list prices.  The State fails to allege that the PBMs provided any *PBM services* in parallel.

## IV.  THE COURT SHOULD DISMISS THE PBMS' CORPORATE PARENTS AND AFFILIATE ENTITIES.

The State fails to show that it adequately pleaded claims against the PBMs' corporate parents (CVS Health Corporation and Evernorth Health, Inc.) and uninvolved affiliates (CVS Pharmacy).  The State does not claim that those entities are liable based on alter ego or agency theory.  Opp'n 27-28.  Rather, the State claims that those companies were "directly involved in the Insulin Pricing Scheme."  *Id.*; *see, e.g.*, Compl. ¶¶ 124 ("On a regular basis, Evernorth executives and employees communicate with and direct its subsidiaries related to the at-issue PBM services and formulary activities"); 83 ("During the relevant time, CVS Health … has repeatedly, continuously, and explicitly stated that CVS Health 'design[s] pharmacy benefit plans that minimize the costs to the client while prioritizing the welfare and safety of the clients' members and helping improve health outcomes.'").  Those allegations are entirely conclusory and, therefore, are not entitled to any weight.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Just as the U.S. District Court for the Southern District of Mississippi dismissed CVS Pharmacy, Inc. from a substantially similar case in that jurisdiction, the Court should dismiss the PBMs' corporate parents and uninvolved affiliates here.  *See* Ex. A (decision dismissing CVS Pharmacy, Inc. from similar case in the Southern District of Mississippi).

## <u>CONCLUSION</u>

For the foregoing reasons, and those included in the PBM Defendants' opening brief, this Court should dismiss all of the State's claims against the PBM Defendants with prejudice.

Dated: May 24, 2023                    Respectfully submitted,

*/s/ Casey P. Murray*
Casey P. Murray, #22189
Spencer Fane LLP
1000 Walnut, Suite 1400
Kansas City, MO 64106
Tel: (816) 474-8100
Fax: (816) 474-3216
cmurray@spencerfane.com
*Attorney for CVS Health Corporation;*
*CVS Pharmacy, Inc.; Caremark Rx, LLC;*
*Caremark PCS Health, LLC; and Caremark, LLC*

OF COUNSEL:

Enu Mainigi (*pro hac* vice)
Craig Singer (*pro hac vice*)
R. Kennon Poteat (*pro hac vice*)
A. Joshua Podoll (*pro hac vice*)
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com

*/s/ Taylor Concannon Hausmann*
Taylor Concannon Hausmann, KS #26668
**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, MO 64112
T: 816.983.8319
F: 816.983.8080
taylor.hausmann@huschblackwell.com
*Attorney for Evernorth Health, Inc. (formerly*
*Express Scripts Holding Company); Express*
*Scripts, Inc.; Express Scripts Administrators, LLC;*
*ESI Mail Pharmacy Service, Inc.; Express Scripts*
*Pharmacy, Inc.; and Medco Health Solutions, Inc.*

OF COUNSEL:

Jason R. Scherr, *Pro Hac Vice*
jr.scherr@morganlewis.com
Patrick A. Harvey, *Pro Hac Vice*
patrick.harvey@morganlewis.com
**MORGAN LEWIS & BOCKIUS, LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001


*/s/ Bradley J. Schlozman*
Bradley J. Schlozman (KS Bar #17621)
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, KS 67206
T: (316) 660-6296
F: (316) 630-8466
bschlozman@hinklaw.com
*Attorney for OptumRx Inc.*

OF COUNSEL:

Brian D. Boone (*pro hac vice*)
**ALSTON & BIRD LLP**
1120 S. Tryon Street, Ste. 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com

Kelley C. Barnaby (*pro hac vice*)
**ALSTON & BIRD LLP**
950 F. Street, NW
Washington, D.C. 20004
T: (202) 239-3300
kelley.barnaby@alston.com

Elizabeth Broadway Brown (*pro hac vice*)
D. Andrew Hatchett (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Ste. 4900
Atlanta, GA 30309
T: (404) 881-7000
liz.brown@alston.com
andrew.hatchett@alston.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed electronically with the United States District Court for the District of Kansas via the CM/ECF system, with notice of case activity generated and sent electronically on this 24th day of May 2023, to all counsel of record,

*/s/ Casey P. Murray*
Attorney for CVS Health Corporation.
CVS Pharmacy, Inc.; Caremark Rx, L.L.C.;
Caremark PCS Health, L.L.C.;
and Caremark, L.L.C